SOMMERVILLE, J.
Defendant appeals from a verdict finding him guilty of the murder of Marion L. Swords, the shex-iff of the parish of St. Landry, and a judgment condemning him to death.
There are 13 bills of exceptions found in the record, and several unsigned bills.
The first bill has reference to a ruling of the court on the trial of a motion for a change of venue. The motion was subsequently abandoned.
The second bill was taken to a ruling of the court on defendant’s objection to going to trial on the ground that:
“The jury commissioners of the parish of St. Landry had failed and neglected to prepare the tales jury box, or box of 100 tales jury men, in accordance with law by placing therein the names of one hundx-ed men,” etc.
The trial judge states that the objection was overruled “for the reason that the defendant has not established by any method that the list of tales jurors was not regularly drawn, or to show how said list in any manner is irregular.” It appears from the record that 60 names were drawn from the box at one time, and subsequently 40 other names. It was therefore clear that the number of names in 'the box was 100 when the objection to going to trial was made.
[1] Bills Nos. 3, 4, 5, and 6 were taken to rulings declaring four jurors named to have been competent and qualified to sit on the jury. The record contains the examination of these several jurors, in part. It appears that they had answered that they had read or heard of the crime charged against defendant, and that they had formed opinions as to the guilt of the accused. They had answered counsel for the defendant that they would require defendant to prove his innocence. But, on examination by the judge, they testified that they did not understand the questions px-opounded by counsel for the defendant, and answered the following question by the court in the negative:
“Q. Mr. Cannon, if the court instructed you that the defendant is px-esumed to be innocent, and is not required to prove his innocence, but, on the contrary, that the state is required to prove his guilt beyond a reasonable doubt, then you would require him to px’ove himself innocent?”
And in answer to a further question by defendant’s counsel, the juror stated:
“I didn’t understand what you were saying. If I did (that I would requii’e the accused party to prove his innocence before I would acquit him) I will take it back.”
Juror Guidry answered to the same effect. He said that the opinion which he had formed would depend upon the evidence, and that it would yield to that evidence; his opinion was not fixed, and that, if the evidence produced upon the trial was different from what he had heard, his opinion would be changed.
Juror Dupre answered the same; that, while he had formed an opinion, it would yield to the evidence, and that he would go into the jury box and decide the case exclusively on the evidence given by the witnesses and the law as given by the court.
Juror Cormier testified that his opinion was fixed from what he had heard, but that it could be changed by the evidence. When asked:
“Q. Do you feel that, notwithstanding what you have heard or x-ead about the ease and the opinion that you have expx-essed, you could go into the jury box here and under your oath as a juror decide the case according to the law and the evidence?”
—and he answered that he could; and that Ms opinion “would yield to the evidence.”
*139 It is well settled that a citizen does not disqualify himself from jury service because he reads the newspaper accounts of the crimes committed in the community and forms his opinion with reference to the guilt or innocence of the accused parties; provided, . that opinion will yield to the evidence produced on the trial of the cause, and that the prospective juror is not biased, and will decide the cause on the evidence adduced on the trial. It appears that 180 jurors were examined on their voir dire before the jury was selected in this case; and it will be assumed that no jury could have been selected in the parish if every inhabitant disqualified himself by having read or talked over the murder of the sheriff of that parish. It will be assumed that no intelligent person in the parish had not read or heard of the occurrence, and that some kind of opinion had been formed by each one as to the guilt or innocence of the accused. But inclination and opinion on the part of the prospective juror should not disqualify him, when it is shown by the examination on his voir dire that he is not prejudiced, and that the opinion which he had formed is not fixed, and would yield to evidence introduced on the trial of the cause, and that he would be guided as to the law of the case by instructions from the trial judge. It would indeed be hard to find, we suppose, 12 jurors who had not read or heard of the murder of the sheriff of their parish; the intelligence of such would be of such a low order that they could hardly be expected to serve as competent jurors in any case. The rulings of the district judge were correct.
[2] The seventh bill of exceptions is taken to the ruling of the court in refusing to permit the defendant to peremptorily challenge a juror who had been accepted by both state and defendant and sworn, which juror was unnamed in the motion to challenge by counsel. It was too late to peremptorily challenge the juror after he had been accepted and sworn. He might have been challenged by the defense before he had been accepted by him. Or, if defendant wished to purge the jury, he should have proceeded in a different manner, and the disqualification of the juror be shown in a legal way.
The eighth bill of exceptions was taken to confessions or admissions made by the defendant to the sheriff of Calcasieu parish, and were testified to by that sheriff as a witness. The ground of objection was that the defendant had been shot on the day before, and that he was not in a physical condition to have made any binding statement, and that he was not responsible for any statement that he made at that time. The objection was overruled by the district judge for the reason that:
“In the opinion of the court the evidence shows that the statement testified to by sheriff Reid was made to him by the defendant, free and voluntary.”
The evidence of the' witness was that the defendant had said that he was sorry that he had killed Sheriff Swords, and that he would not have done it if he had not had certain negroes with him. The witness further testified that the statements made by defendant were made freely and voluntarily, and that, while the defendant was suffering, he was conscious of what he was saying. The admissions of the defendant were properly admitted.
The ninth bill of exceptions is taken to the ruling of the court in permitting Sheriff Reid to testify that a certain rifle and belt had been picked up at the place of the killing and handed to him at the time of the arrest of the defendant, for the reason that it had not been shown that this rifle was the same one that Mr. Fontenot, the sheriff of the parish of St. Landry, had received. Mr. Fontenot did not take the stand to identify the rifle.
Mr. Reid appears to have testified, accord *141 ing to the statement of the trial judge, that the rifle was the same rifle which he, Reid, had taken from the deceased at the time of the murder, and that he had handed over to the sheriff of St. Landry on the morning of the trial. It was unnecessary for Sheriff Fontenot to take the stand to identify the rifle in the presence of Sheriff Reid, who identified the rifle as the one belonging to the accused, which he, the witness, had had in his possession ever since the killing. The ruling was correct.
[4] The tenth bill of exceptions was taken to the testimony of a witness, to the effect that defendant had said that he would kill anybody who attempted to arrest him. The objection is based on the ground that no overt act had been established by the state, and that no previous threat could be admitted until the proper foundation had been made. The evidence was properly admitted to show malice and motive, whether such threats were ever communicated to the deceased or not; and it was not necessary to prove an overt act on the part of the accused before admitting evidence of the threats he made against the accused. Marr’s Criminal Jurisprudence, § 39, p. 67; State v. Fontenot, 48 La. Ann. 305, 19 South. 111. The objection was properly overruled.
Bill of exceptions No. 11 is to the same effect as that of No. 10, with this addition: That the witness is said not to have been able to repeat the entire conversation between the accused and the witness named in bill No. 10. He repeated the substance of the conversation; and this was all that was necessary. It would appear from the judge’s reasons that the witness testified to the entire conversation that he had heard. The ruling was correct.
[3] The twelfth bill of exceptions was taken to a certain remark of the district attorney made in the course of his argument to the jury. According to the statement of the district judge attached to the bill, it appears :
“The evidence in this case shows that the defendant had armed himself and expressed his intention to resist arrest on a charge of murder then pending against him in the parish of Jefferson Davis. That he carried a rifle and belt of cartridges constantly with him and had sent word to the deceased sheriff that if he wished to see him, he must come alone and with open hands. The defendant’s counsel had made a pathetic appeal to the jury for mercy, and had read freely fromi the Bible in their plea for mercy. In answering this plea for mercy, the district attorney said: ‘They plead to you for mercy, but, gentlemen of the jury, under the circumstances of this case, this defendant is no more entitled to your mercy than is Villa to that of the civilized world.’ ”
It is difficult to see what injury may have been, done by the district attorney in the use of the language complained of. The district attorney therein was simply answering the appeal which had been made by defendant’s counsel for mercy, and he said that he was not entitled to mercy, no -more entitled to it than “is Villa to that of the civilized world.” This was a legitimate comparison, and it was used by the district attorney as being one that would be readily understood by the jury, as they had doubtless read or heard of Villa and his doings. There is no objection to the remark complained of.
[5] The last bill of exceptions is taken to the ruling of the court on a motion for a new trial, containing the several points already disposed of in this opinion, and, in addition thereto, that the jury, during its deliberations on the case—
“was allowed to dine in the restaurant (a public restaurant) along with the common public, and that they ate at separate tables, and were separated, that they were exposed to the remarks of the public, and that the public was highly incensed against the accused party, who is your mover, and that there were many people in the restaurant where they dined, and that numerous parties were compelled to vacate tables and go to other tables in the same room in order to allow the jury to occupy tables in the common restaurant, and that all of said occurrences *413 happened after they had been charged by the court, and were engaged in their deliberations.”
The evidence taken in connection with this motion does not sustain the allegations made, except in part. The jurors were taken to a public restaurant in charge of two deputy-sheriffs, and they ate at separate tables, because one table was not large enough to accommodate them all. There were not many people in the restaurant, perhaps not more than six, some of whom were requested to go to the other side of the room from where they were sitting, so that the jurors might all sit on one side of the room, away from the other guests. They did not “dine along with the common public.” They dined at three tables, ranged in a row, to themselves, and they were not exposed to any remarks of the public, or addressed by any person who “was highly incensed against the accused party.” They were kept apart from all other persons, and had no communication of any kind with any person. The jurors, under such circumstances, cannot be said to have been separated, and misconduct on their part, or on the part of any towards them, is not shown in the evidence.
Defendant’s counsel and his wife were among those who were in the restaurant at the time the jury entered, and they remained in the restaurant for a part of that time. Counsel did not testify to any misconduct on the part of the jury; and, as has been stated, none was shown. The motion for a new trial was properly overruled.
Judgment affirmed