(124 So. 188)

No. 29892.

**STATE v. LOUVIERE.**

July 8, 1929. Rehearing Denied Oct. 8, 1929.

 See, also, 165 La. 718, 115 So. 914.

Robert J. Perkins, of New Orleans, for appellant.

Percy Saint, Atty. Gen., E. R. Schowalter, Asst. Atty. Gen., and John E. Fleury, Dist. Atty., and Higgins, Asst. Dist. Atty., both of New Orleans, and J. K. Gaudet, of Gretna, for the State.

ROGERS, J. Defendant was tried twice for murder and convicted each time without capital punishment. His first conviction was annulled on appeal. 165 La. 718, 115 So. 914. His second conviction is the basis of the present appeal. The appeal is supported by numerous bills of exception.

■ Bill No. 1. The court below denied defendant's motion to quash the indictment on the ground that an unauthorized person was present during the deliberations of the grand jury. A similar plea was made and disposed of on the first trial of the defendant. By agreement of counsel the testimony adduced on that trial was submitted in connection with the plea on the second trial. The testimony disclosed that a stenographer was present in the grand jury room for the purpose of taking down the statements of the witnesses in order to preserve them, but that the stenographer retired with the district attorney before the grand jury began its deliberations. On defendant's first appeal this court held that these facts were not prejudicial and that the motion to quash was properly denied. We adhere to that ruling.

■ Bill No. 2. A prospective juror, one Eli Guidry, was challenged for cause by the defendant. The court below overruled the challenge and this bill was reserved. The basis of defendant's challenge for cause was a statement made by the prospective juror, in answer to a question propounded by defendant, that he believed every man who kills another except by accident should be punished by being hanged. The prospective juror was the fifth one called for examination, and at the time he was challenged defendant had not used any of his peremptory challenges. Defendant did not peremptorily challenge Guidry, but the state, itself, subsequently, did so, and he did not sit on the case. In these circumstances, we fail to see wherein the defendant was injured. The bill is untenable.

Bill No. 3. This bill was reserved to the action of the court below in denying defendant's challenge for cause of one Melvin Granier, a prospective juror. On his voir dire, Granier stated that he had laid off from work for one day for the purpose of attending the previous trial of the defendant of which he had heard a portion. It does not appear, however, that from what he had heard, or otherwise, the prospective juror had formed or expressed any opinion concerning the guilt or innocence of the defendant, or that he was biased or prejudiced against him in any way. In response to questions of the trial judge, the prospective juror declared that if selected on the jury he would disregard what he had heard on the first trial and try and decide the case solely on the evidence that he would hear on the present trial. The trial

judge then refused to allow the challenge for cause, and the prospective juror was challenged peremptorily by the defendant.

There was no error in the ruling complained of. A juror is not incompetent who has heard a portion of a previous trial for the same offense, but has not formed nor expressed an opinion of the guilt or innocence of the accused, is not biased nor prejudiced against him, and feels that he can try the case fairly and impartially. Cf. State v. Ford, 37 La. Ann. 458.

Bill No. 4. The bill was reserved to the action of the court below in admitting, over defendant's objection, certain testimony given by A. L. Mongrue, justice of the peace of the Second ward of St. Charles parish. The bill recites that the objection was made to the offer of the procès verbal of the inquest held by the witness on the body of the deceased. The facts as disclosed by the record show, however, that no such offer was made. The only procès verbal of an inquest offered in evidence was that of the coroner of the parish. It developed from the testimony of the coroner as well as of other witnesses that this inquest was held at the home of the deceased, while the homicide had taken place at the home of the defendant. The witness A. L. Mongrue was placed on the stand by the state to explain the removal before the coroner's inquest of the body from the scene of the homicide to the residence of the deceased. He testified that the coroner was absent from the parish at the time of the homicide and that he was called upon to hold an inquest on the body of the deceased. which he did, and thereafter he authorized the removal of the body. The inquest held by the witness was not used in the trial of the case, and his testimony related solely to the removal of the body from the place of the homicide to the place where the coroner's inquest was held. There is no merit in the bill.

Bills Nos. 5, 6, 7, and 8. These bills are of the same tenor as bill of exception No. 4. They disclose adverse rulings on defendant's objections to the testimony of the witness A. L. Mongrue relative to his holding an inquest, on the grounds that it was hearsay; that the witness was testifying to official acts beyond his jurisdiction; and that his testimony as to his granting permission to remove the body of the deceased was incompetent and illegal. There is no force in defendant's objections and they were properly overruled.

Bill No. 9. Wiley Louviere, a son of the defendant, testified for the defense on the first trial, and because of the exclusion, upon objection by the state, of a certain portion of his testimony, defendant's conviction was annulled and the case remanded. On the second trial, Wiley Louviere was used again as a witness for the defense. Because of the ruling of this court on the first trial, the widest latitude was afforded defendant's counsel in his examination of the witness. At a certain point in the examination, the trial judge felt called upon to caution counsel for the defendant in regard to certain irrelevant and immaterial testimony he was endeavoring to elicit from the witness and to advise him that he was opening the doors to a wide range of such testimony for the consideration of the jury, particularly in the absence of objection on the part of the state. The court then inquired of the state if it had any objection to the testimony, and receiving an answer in the negative, ordered counsel for defendant to proceed with the examination. This was done, and in the course of the examination, counsel for the defendant was permitted to introduce all kinds of evidence

(opinion, irrelevant, and immaterial); to repeat testimony that had been gone over again and again; and to propound leading and suggestive questions. In all of which we fail to see wherein the defendant was prejudiced, and it is certain that defendant has not pointed out any injury caused him by reason of the incident of which he complains.

The trial judge can and ought to interfere, even in the absence of objection by opposing counsel, with a useless and irrelevant examination of a witness, in order to prevent the waste of time and distraction of the attention of the jury, and such action furnishes no ground for reversal, if the ruling be otherwise correct. State v. McGee, 36 La. Ann. 206; State v. Crittenden, 38 La. Ann. 448.

Bill No. 10. The witness Wiley Louviere was asked the following question, viz.: "Did your father use that gun very often?" The question was excluded upon objection by the state. It had reference to the gun of the defendant which was found unloaded alongside the body of the deceased, and was propounded after the witness had been thoroughly examined, cross-examined, re-examined, and recross-examined. The objection to the question was that it was irrelevant and immaterial and did not involve any new matter that had been brought out in the cross-examination or recross-examination of the witness. The court below excluded the question on the ground, specifically, that the witness had been thoroughly examined by the parties on every phase of the case of which he had any knowledge, and that it was useless to prolong his examination on a matter which was of no evidentiary value whatever.

The defendant sets forth in his bill that it was of vital importance to his defense that the question should have been permitted and answered, but neither in the bill nor in his

argument in support thereof does he show: wherein the importance of the question and its answer lies. For our own part we are unable to appreciate the materiality of the testimony in view of the fact, as disclosed by the record, that the death of the deceased: was not caused by a gunshot wound nor by a: gun, but was due to his having been repeatedly struck on the head by a piece of 2x4 scantling. We do not find that in excluding the testimony the trial judge abused the sound discretion vested in him by law to expedite the trial of a case by putting a stop to the prolonged and useless examination of a witness. See State v. Rodriguez, 115 La. 1004, 40 So. 438.

Bill No. 11. After the state had rested with the right of rebuttal and the witnesses for the defense had been heard, counsel for the defendant requested the court to permit his client before closing to make an unsworn statement to the jury without being subjected to cross-examination. The court refused to permit the defendant to do this. His counsel then asked that the defendant be sworn and permitted to address the jury without being cross-examined by the state. This request was also refused. The court below in refusing the requests of counsel for the defense stated that the defendant could, if he so desired, take the stand and testify and, like any other witness, be cross-examined by the opposing party. Defendant, however, failed to avail himself of the privilege and did not testify in the case. The incidents referred to form the basis of the present bill.

At common law the accused, at least in capital cases, is entitled to address the jury without being subject to cross-examination, at the close of his case, giving his own story as to any relevant facts; but the right does not seem to be absolute and has been refused in some cases where the accused was repre-

sented by counsel. Wharton, Crim. Ev. (10th Ed.) vol. 1, pp. 897, 898.

▐ The custom grew up in England out of a spirit of fairness to give an accused, who was otherwise disqualified, an opportunity to tell his story in exculpation. A similar practice was followed or was introduced by statute in some of our own states and still prevails in Georgia. Wigmore on Evidence, vol. 1, p. 709, § 579. But the rule ceases when the reason on which it is founded ceases, which is the case in those jurisdictions wherein the competency of an accused is expressly declared by statute. In such cases the unsworn statement of an accused becomes secondary to his right of testifying under oath and cannot be received. Wharton, Crim. Ev. (10th Ed.) vol. 1, p. 898.

The common-law rule formerly prevailing in this state under section 33 of the Crimes Act of 1805, so far as it relates to the competency of witnesses, was abrogated by Act 29 of 1886, which, in turn, was superseded by Act 157 of 1916, defining who shall be competent witnesses in civil and criminal cases. This statute which has been incorporated substantially into Crim. Code, art. 461, provides, among other things, in section 1 that: "In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, a person so charged shall, at his own request, but not otherwise, be deemed a competent witness; and his neglect or refusal to testify shall not create any presumption against him." ·

▐ If an accused avails himself of the privilege granted by the statute, he becomes subject to all the rules applicable to other witnesses and may be cross-examined, impeached, corroborated, or recalled.

▐ There was no error committed by the trial judge in the rulings of which defendant complains.

▐ Bills Nos. 12, 13, and 14. These bills are referred to but not argued in the brief of counsel for defendant. All of them were reserved to the action of the trial judge in sustaining objections of the state to certain interrelated remarks made by counsel for defendant in his argument to the jury. The purport of the remarks was that some person or persons had been prejudicing the community against the defendant. The trial judge states that he sustained the objections and refused to permit counsel to argue along the line he was attempting to do, because there was no evidence whatever in the record from which counsel could draw even an inference, much less a conclusion, that some one was working against the interest of the defendant or that any person had been guilty of objectionable practices. The bills are therefore untenable.

▐ Bill No. 15. Counsel for the defendant, in his argument to the jury, declared that, "This defendant was refused the right to take the stand." The state objected to the statement and the objection was sustained. Hence this bill. The record plainly shows that the declaration objected to was not in accordance with the facts. At no time was the defendant refused the right to take the stand, nor did he express a desire to testify as a witness. The only thing he wanted to do was to make a statement, unhampered by cross-examination, to the jury as set forth in bill of exception No. 11, referred to supra. There is no error in the ruling complained of.

▐ Bill No. 16. This bill was taken to the action of the court in overruling defendant's objection to certain remarks of counsel assisting the state in his argument to the jury. These remarks were as follows, viz.: "I will tell you what happened—Louviere hit Willie Champagne back of the head and as he was falling down and when he was down hit him

again and again." The trial judge held that the argument was a legitimate one, being counsel's conclusion of the facts as shown by the evidence in the record. We agree with this ruling. The evidence shows that eight separate and distinct blows were delivered on the back, front, and other portions of the head of the deceased, whose brains were oozing out of some of the wounds. The body was found lying on the floor in a rear room of the defendant's home, and a piece of 2x4 scantling stained with blood was found in a barrel near by.

 Since the case was argued and submitted, a supplemental transcript has been filed in obedience to an order of this court issued upon the application of defendant's attorney. This transcript contains a copy of a special charge to the jury asked for by defendant and refused by the trial judge. It also contains copies of motions for a new trial and in arrest of judgment, which were likewise refused by the trial judge. These motions, however, with the action of the trial judge thereon, appear in full in the original transcript. According to the record as now made up and filed in this court, no bill of exception was taken to the action of the trial judge in refusing either the special charge, the motion for a new trial, or the motion in arrest of judgment. In the absence of such bills, we cannot consider the first two rulings complained of. The other ruling complained of is open to our consideration without the necessity of a formal bill, since the motion in arrest is founded on alleged errors of law patent on the face of the record. When we examine the motion itself, we find that it presents only two questions of alleged error, viz.: First, that the indictment is defective because of the presence in the grand jury room of the stenographer who, for the purpose of preserving them, took down the statements of the witnesses. Second, that defendant to his prejudice was denied the right to make a statement to the jury. Both of these questions are discussed and disposed of adversely to defendant's contentions under bills of exceptions Nos. 1 and 11.

For the reasons assigned, the conviction and sentence appealed from are affirmed.