OVERTON, Justice.
 

 George Daleo, the defendant herein, and one John Capaci were indicted jointly for murdering Charles Rabito. Defendant, upon his own motion, was granted a severance. Upon his trial he'was found guilty as charged, and was sentenced to be hanged.
 

 Daleo has reserved six bills of exceptions, and has filed an assignment of errors, upon all of which he relies for a reversal. Some of the bills to the same questions presented here were urged in the case pf State v. Capaci (La. Sup.) 154 So. 419,
 
 [1]
 
 this day decided. It would be a mere repetition of substantially the same reasons for us to discuss such bills here. Therefore we shall, as to these bills, merely make reference to our opinion in the other case for the reasons upon which our rulings in the present case rest, adding here and there a remark.
 

 The first bill of exception was taken to the overruling of a motion to quash the indictment, which charges that “John Capaci and one George Daleo * * * wilfully, unlawfully and feloniously murdered one Charles Rabito.” The motion is largely based on the ground that the indictment does not follow either the short form for charging murder, permitted by article 235 of the Code of Criminal Procedure, or the other statutory form, sanctioned by section 1048 of the Revised Statutes. The motion to quash contains other grounds, which are not discussed by defendant in his brief under this bill, but are discussed under another bill.
 

 In the case of State v. Capaci, 154 So. 419,1 this day decided, the ground here urged for quashing the bill was fully considered under the title of “Bills of Exceptions Nos. 1, 2, & 3.” It was there held that the words “wilfully, unlawfully and feloniously” preceding the word “murdered” were surplusage, and that the indictment was in the short form, permitted by article 235 of the Code of Criminal Procedure. We have nothing further to add to the reasons there given for our ruling, and they are here adopted.
 

 Bills of exception Nos. 2 and 3 were taken to what is referred to as the plea to the
 
 *521
 
 jurisdiction of the court and to the right of the district attorney to make an opening statement to the jury, prior to the introduction of evidence, provided for by article 333 of the Code of Criminal Procedure.
 

 The gravamen of both of these bills is that the Code of Criminal Procedure was not adopted by the Legislature as a code as was authorized by Act No. 262 of 1926, now forming a part of the Constitution. This plea is fully considered by us in State v. Capaci, 154 So. 419,
 
 [1]
 
 this day decided, under the heading of “Bills Nos. 2 and 3,” and need not be considered further. It was there held that the Code of Criminal Procedure was constitutionally adopted and constitutionally promulgated by publishing it in book form. It having been so held, it is apparent that the district attorney had the right, in fact it was his duty, to make the statement as provided by article 333 of the Code of Criminal Procedure. See State v. Capaci, 154 So. 419,1 this day decided, ruling on bill of exceptions No. 5.
 

 Bill of exceptions No. 4 was taken to the failure of the district attorney to say in his opening statement to the jury and to the refusal of the trial judge to require him to say which one of the two indicted, Capaci or Daleo, fired the fatal shot. Nevertheless, though failing to give the name of the accused who fired the shot in his opening statement, the district attorney did say that he expected to prove that, following the killing on the day thereof, the defendant, Daleo, purchased a hat on Dryades street, in New Orleans, and left a cap with the proprietor of the store. On the trial, the district attorney, notwithstanding his failure to name the person who fired the shot, offered evidence tending to show that the person who did so, not only wore a cap, but wore a gray cap, and, while the district attorney stated that he expected to show that the person wore a sweater, he offered evidence to show that it was a gray sweater, and produced from defendant’s cell a gray sweater and offered it in evidence. Before this evidence was offered, the only eyewitness to the homicide, too remote from the scene to see much, gave evidence showing that the person who fired the.shot wore a gray sweater and a gray cap. The district attorney in his opening statement mentioned those facts, but did not mention the color of the sweater or cap. Erom these facts the bill recites that the district attorney argued to the jury that Daleo fired the fatal shot.
 

 The facts tending to show which one of the defendants fired the fatal shot fall short of establishing which one did fire it. The facts tending to identify the person who did fire it are purely circumstantial, and are insufficient to identify him. Moreover, aceordingto the state’s theory of the case — -that of conspiracy — it is immaterial which one of the defendants fired the shot. In these circumstances, the district attorney was not required in his opening statement to name the person whom he expected to show fired the shot. In fact, he urges that he was not able to do so.
 

 As to the evidence- that was offered by the state tending to identify the person who actually shot the deceased, no bill was reserved to its admission, and therefore the ln
 
 *523
 
 troduetion of the evidence cannot he taken advantage of by defendant in this court. It is true that the evidence is stated in the bill, taken to the refusal of the court to require the district attorney to name the person whom he expected to show fired the shot, but, if any objections were made to its admission, or any rulings made on them or bills taken, they do not appear. We therefore take it that the statements of this evidence were put in the bill taken to the refusal of the court to require the district attorney to name the person: whom he expected to show fired the shot, for the purpose of strengthening and reinforcing that bill. A bill to a ruling, similar to the one -here taken to the refusal of the judge, was considered by us in State v. Capaci, 154 So. 419,
 
 [1]
 
 this day decided,' under the title of bill of exception No. 6. Reference is made to the reasons there given for not requiring the district attorney to name the person.
 

 Bill No. 5 was taken to the refusal of the trial judge to grant defendant a new trial on the ground of newly discovered evidence. The first part of the motion sets forth as grounds for a new trial the same matters considered by us in passing on the foregoing bills of exceptions. It is therefore needless for us to consider these grounds reiterated in the form of a motion for a new trial. The remainder of the motion sets forth as grounds for a new trial newly discovered evidence. This evidence is that one Mary Scovatto will testify, if a new trial be granted, that she conversed on the morning of January 5, 1933, the morning of the day of the homicide, the homicide having been committed at about 1 o’clock p. m. on that day, with Daleo, and that Daleo was dressed in a gray hat, a white shirt, and dark trousers; that she saw Daleo leave her place of business and walk towards the place of business of his brother, Anthony Daleo; that Anthony Daleo will testify that on the morning of January 5, 1933, between 10:30 and 11 o’clock, defendant went to his place of business in New Orleans, and that he was dressed in a gray hat, white shirt, and dark trousers; that Robert Ryder saw defendant on the streets of New Orleans between 11 and 11:15 o’clock on the morning of January 5, 1933, and that defendant was dressed in a gray hat, white shirt, and dark trousers; that he will be able to prove on a new trial of this cause that the state’s only eyewitness, the boy, Andrews, perjured himself on the trial, when he testified that he saw a man with a gray cap at or near the scene of the homicide leave an automobile, in the company of another person, go into the woods, and, after the firing of two shots, return to the automobile alone, while he (Andrews) was at a distance of two or three blocks from the scene of the homicide, and while Andrews was driving cows on the railroad track paralleling the highway; and that it was physically impossible for Andrews or any one else to have seen the place of the homicide as established by the evidence; and that defendant will establish these facts by two witnesses, Leo W. McCune and W. Hay Gill.
 

 The motion for a new trial does not set forth the facts necessary to show that the test made by McCune and Gill was made under conditions similar to those under which An
 
 *525
 
 drews saw the few incidents and things to which he testified. Without showing such facts, the evidence was not admissible, for the test, without them, would be worthless and misleading. Moreover, the evidence amounts to nothing more than impeaching evidence, to admit which a new trial will not be granted. Article 511, Code Cr. Proc.
 

 The remainder of the newly discovered evidence, namely, that relating to the wearing apparel, is too immaterial to justify the conclusion that its admission would result probably in a different verdict. Where newly discovered evidence would not likely have that result, it is not ground for a new trial. State v. Tessier, 32 La. Ann. 1227; State v. Washington, 33 La. Ann. 896.
 

 When the judge overruled the motion, he had before him the voluntary confession of defendant, showing that both he and Capaci were at the scene of the homicide, with evidence showing that each threw the blame for firing the fatal shot upon the other, and showing that, while the one who left the automobile with the deceased walked into the woods or behind the bushes with him, the one remaining in the automobile sounded the horn thereof and kept the engine running, apparently for the purpose of drowning the noise of the pistol shots. With this evidence before him the judge could not help but conclude that the one remaining in the automobile was a principal or a member of a conspiracy. In either event, it is immaterial which one of the defendants fired the fatal shot.
 

 It is obvious that the purpose of the newly discovered evidence as to the apparel worn by defendant on the morning of the murder is to destroy the immaterial evidence produced by the state, tending to show that defendant was the one who actually fired the shot.
 

 As no reason exists for disturbing the trial judge’s discretion in refusing a new trial, the bill of exceptions is overruled.
 

 The sixth bill of exceptions was reserved to the overruling of a motion in arrest of judgment. This motion rests upon . the grounds that the charge of the judge to the jury, which was in writing, and which appears in the transcript, is not applicable to the case; that the judge’s instructions to the jury on conspiracy are contradictory and confusing, and upon the ground that no judgment against him can be lawfully rendered on the record.
 

 A motion in arrest of judgment reaches only defects, not curable by verdict, appearing on the face of the record. Code Cr. Proc. arts. 517, 518. To determine whether the judge’s charge, though written and filed in the record, and brought up in the transcript, constitutes a part of the record, we must first ascertain what constitutes the record. In State v. McCrocklin, 130 La. 108, 57 So. 645, 646, this court said:
 

 “We are lead to inquire whether there is error patent on the face of the record. This leads us to the inquiry, What is the record? A definition answers the question. It includes the caption in a criminal case, a statement of time and place of holding the court, the indictment or information with the indorsement, the arraignment, the plea of the accused, mention of the impaneling of the ju
 
 *527
 
 ry, verdict, and judgment of the court. United States v. Taylor, 147 U. S. 695, 13 S. Ct. 479, 37 L. Ed. 335.”
 

 The charge of the court, though written, and appearing in the transcript, is no part of the record. To hold that errors, if any, in the court’s charge may he reached by motion in arrest of judgment, would be destructive of article 391 of the Code of Criminal Procedure, which, based upon prior jurisprudence, reads that:
 

 “Every objection to the charge given or to a refusal to charge as requested, or to a refusal to give the charge in writing, shall be by means of a bill of exceptions reserved before the jury shall have retired to deliberate upon their verdict, and shall be accompanied by such a statement of facts as shall show the error in the charge given, or in the refusal to charge as requested, or that the request to give the charge in writing was refused.”
 

 This was the rule announced, prior to the adoption of the Code of Criminal Procedure, in State v. Bush, 117 La. 463, 465, 41 So. 793; State v. Miller, 125 La. 254, 51 So. 189; State v. McCrocklin, 130 La. 108, 57 So. 645. The reason for the rule is that it is not considered proper that the defendant should he permitted to sit idly by while the judge is making an erroneous charge to the jury, take his chances upon the verdict, and, if against him, then by assignment of error or motion in arrest take advantage of it. For these reasons the court' cannot consider the motion in arrest of judgment, and the hill to its overruling is therefore not sustainable.
 

 Within due time, after the filing of-the transcript of i appeal in this court, defendant ■filed an assignment of errors. These errors all relate to the judge’s charge. As the judge’s charge is not a part of the record, the assignment of errors does not reach it, for an assignment of errors, like a motion in arrest of judgment, must be based on errors patent on the face of the record. Code Cr. Proc. art. 560.
 

 The verdict of the jury and the sentence of the court are affirmed.
 

 ST. PAUL, J„ absent.
 

 [1]
 

 179 La. 469.
 

 [1]
 

 179 La. 462.
 

 [1]
 

 179 La. 462.