**24 So.2d 620**

### STATE v. FRAZIER.

No. 38059.

Jan. 7, 1946.

Shapiro & Shapiro, of Alexandria, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and Ben F. Thompson, Dist. Atty., and Walter M. Hunter,

Asst. Dist. Atty., both of Alexandria, for the State.

## FOURNET, Justice.

The defendant is appealing from his conviction on a charge by bill of information with the crime of attempt to murder and his sentence thereunder to serve seven years at hard labor in the Louisiana State Penitentiary.

In order that the issues raised in this case may be properly understood, it is necessary that the facts be given and these, as stated by the trial judge in his per curiam to one of the bills, are that "On September 3, 1945, Mr. McQueen, a white man, was returning to his home near Pollock, Louisiana, which is a few miles north of the City of Alexandria. He had been doing carpentry work in South Louisiana. He went from the train to the bus station and there he asked a negro by the name of Walter Lawson, whom he thought to be a porter, to assist him on the bus with his luggage. McQueen was highly intoxicated and they refused to allow him on the bus and he asked Lawson if he could get a taxi to drive him to his home. The accused, Bill Frazier, a negro, operated a taxi and was at the bus station but it seems that he and Lawson were strangers. Lawson asked Frazier if he would make the trip and all three got in the taxi and started to McQueen's home. They stopped and purchased some whiskey and left the City of Alexandria and after they had gone several miles they drove off the road and both of them proceeded to rob McQueen of approximately $185.00. They left him on the side of the road and started back to Alexandria. They again left the highway and after going a mile or more they stopped and Frazier, claiming he had a flat tire, obtained a hammer from the trunk of his car and made a vicious assault upon Lawson who was found the next day at the scene of the assault in a very bad condition. He undoubtedly had been left at the scene for dead and remained unconscious for many hours but regained consciousness. He had been relieved of everything he had including his shoes.

"Lawson plead guilty to his part of the robbery and Frazier was tried for simple robbery and attempting to murder Lawson. Frazier was tried on the charge of robbery first and while that jury was out the District Attorney called the next case against Frazier, namely, the attempted murder charge. * * *"

At this stage counsel for the defendant objected to going to trial and reserved the first bill of exceptions when such objection was overruled, being of the opinion that it would be impossible for the accused to secure a fair and impartial trial by a jury impaneled from the same venire out of which the jury then deliberating on the robbery charge against Frazier had been selected, especially since the members to be selected had been in the courtroom and had heard all of the evidence adduced on the charge against him for robbery, some of which was not presented in the case under consideration, contending that under these circumstances the jurors were "automatically and unintentionally" biased and prejudiced.

██ An accused, under the constitution and laws of this state, whether guilty or innocent, is guaranteed a fair and impartial trial and it is the duty of the judge presiding over his trial to uphold such right. Fundamentally, therefore, fairness and impartiality are prerequisite qualifications in all jurors who are called upon to try an accused in a criminal action. But under the express provisions of Article 351 of the Code of Criminal Procedure, a juror is not disqualified because of "an opinion as to guilt or innocence of the accused, which is not fixed, or has not been deliberately formed, or that would yield to evidence, or that could be changed * * *." It is only where a prospective juror's opinion is so fixed that it would influence his verdict that he may be disqualified because of such opinion. See State v. Brette, 6 La. Ann. 652; State v. Carriere, 141 La. 136, 74 So. 792; State v. Scruggs, 165 La. 842, 116 So. 206; State v. Carter, 167 La. 1080, 120 So. 864; State v. Flores, 169 La. 22, 124 So. 132; and State v. Henry, 200 La. 875, 9 So.2d 215.

In the case of State v. Wren, 121 La. 55, 46 So. 99, a case similar in principle to the one under consideration, it appears from the syllabus by the court that the defendants objected to going to trial on a charge of robbery on the ground that the jurors who would try them if the case proceeded had been present during their trial on another charge of robbery and the court held that such objection had been properly overruled because the presence of the jurors during the other trial did not necessarily have the effect of disqualifying them.

In disposing of this bill of exceptions the trial judge remarked in his per curiam that "The jury which was on the regular panel and not serving on the jury on the robbery charge were in and out of the court during the first trial and I overruled the objection and allowed that matter to be gone into on the examination of the different jurors on the voir dire. They were intelligent men and all testified positively that they would try the case on the law and evidence presented to them in the case and that the previous trial, which some of them did not hear, would not influence them in any way. I feel that the jurors were honest and that they could give this accused a fair and impartial trial on this charge and feel that a very fair jury was impanelled."

██ Counsel for the defendant in their brief say that this statement by the trial judge is a fair appraisal of the matter from a factual standpoint, conceding that the jurors qualified under their voir dire and that they were fair men. Their contention, therefore, is without merit.

After verdict but before sentence, the defendant filed a motion in arrest of judgment contending that he had been tried and convicted on a bill of information that on its face was fatally defective in that it did not contain the averment that the accused had the specific intent to kill or to inflict great bodily harm on the alleged victim.

Under the provisions of the Code of Criminal Procedure the state may use the short form of indictment as provided for in Article 235, as well as "any other forms authorized by * * * any other law of this State * * *." Stripped of all su-

perfluous and unnecessary language, the indictment in the instant case was drafted in accordance with the short form and charges the defendant with "attempt to murder Walter Lawson."

This court has on numerous occasions been called upon to pass on the validity of indictments and bills of information drafted in accordance with the short forms provided for in Article 235. See State v. White, 172 La. 1045, 136 So. 47; State v. Capaci, 179 La. 462, 154 So. 419; State v. Eisenhardt, 185 La. 308, 169 So. 417; State v. Pinsonat, 188 La. 334, 177 So. 67; and State v. Moore, 196 La. 617, 196 So. 661.

In the Capaci case it was declared that the indictment charging the defendant did willfully, feloniously, and unlawfully murder Charles Robito conformed to the provisions of Article 235, the words "willfully" and "feloniously" being unnecessary and mere surplusage and held that the indictment as confected sufficiently apprised the accused with the certainty required by law of the nature and cause of the accusation against him, citing the case of State v. White, supra, where the court remarked that "The word 'murder,' as used in that article (235), was deemed by the compilers of the Code, and by the lawmakers in adopting the Code, to be sufficient to include in its legal significance the unlawful killing of a human being with malice aforethought. The short form of indictment for larceny and perjury allowed by article 235 of the Code has been approved by this court, and as 'murder' is a word of universal and common meaning, no citizen of average intelligence could fail to understand the significance of a charge of murder preferred against him."

In defining the crime of murder, our present Criminal Code in Article 30 has excluded the traditional requirement of "malice aforethought, express or implied," which, as reflected by the comment of the reporters following the article itself, is considered a "fictional phrase." The comment continues by stating that most homicides that were formerly considered as murder are covered by the article, all of those homicides where the courts have found "express malice" under the old common-law definition being included under the first subdivision, and the felony-murder doctrine of the common law comprising only the more serious and dangerous felonies therein enumerated being included under the second subdivision.

It is our opinion, therefore, that the indictment was not defective because of the failure to declare that the attempt to murder Lawson was done with specific intent to kill or to inflict bodily harm upon him for this comes within the legal significance of the accusation as drawn and the accused could not fail to understand the import thereof.

The last bill requires no further consideration other than to point out that it was reserved to the overruling of a motion for a new trial containing the usual allegation that the verdict was contrary to the law and the evidence and the above alleged errors just disposed of.

For the reasons assigned, the conviction and sentence are affirmed.