39 So.2d 76

**STATE v. DAVIS.**

No. 38968.

Jan. 10, 1949.

Rehearing Denied Feb. 14, 1949.

Rudolph F. Becker, Jr., of New Orleans, for appellant.

Eugene Stanley, of New Orleans, amicus curiæ.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen. and Herve Racivitch, Dist. Atty. and Guy Johnson, 1st Asst. Dist. Atty., both of New Orleans, for appellee.

HAWTHORNE, Justice.

About two o'clock in the afternoon of January 27, 1947, the accused, who was proceeding east on U. S. Highway 90 in a Plymouth automobile, picked up Charles McSorley, a hitchhiker, somewhere in the vicinity of the Higgins Industries plant, a few miles east of New Orleans. McSorley's destination was Miami, Florida, and the defendant Davis's avowed destination was Jacksonville, Florida. Davis stopped the car somewhere near the Louisiana-Mississippi state line and purchased some lubricating oil. Thereafter the two men continued driving east on Highway 90 for about 15 minutes, crossing into Mississippi, when the defendant informed McSorley that he wanted to relieve himself, and suddenly turned the car off the highway and proceeded a short distance into a thickly wooded section. Upon returning to the car, Davis confronted McSorley with a .32-caliber automatic pistol, compelled McSorley to leave the car, robbed him, forced him to strip, shot him twice, once in the arm and once in the back, and left him prostrate and apparently lifeless.

Davis returned to the highway and turned west toward New Orleans, the direction from which he had come. Unable to find his clothes, McSorley proceeded to the highway and sat upon its edge, naked and bleeding, until he was picked up by two motorists, Robert Meyer and Franklin Parks, the operators of a traveling carni-

val, who were going in the direction of New Orleans.

They encountered Officer Cyril Reichert, a member of the Mississippi State Highway Patrol, who offered to clear the right of way in order that Meyer might rush McSorley into New Orleans for medical aid. After crossing into Louisiana and the Parish of Orleans, McSorley observed that the man who had shot him was in a car that they were passing. This information was conveyed to Officer Reichert, who made an unsuccessful attempt to block Davis's passage. Davis fired at Officer Reichert as he sped past him, and Officer Reichert returned the fire. After a considerable chase down the highway Davis's car finally came to a stop. In Officer Reichert's effort to apprehend him, Davis shot the officer in the left shoulder, continued to fire until he had emptied his own gun, and then grabbed the gun from the fallen officer's hand, and fired one more shot into him.

Meyer and Parks then grappled with Davis, who attempted to shoot Meyer also, threw him to the ground, and disarmed him. He was brought to New Orleans and taken into custody. Officer Reichert was admitted to Charity Hospital in New Orleans and treated for two gunshot wounds, one in the right side of the abdomen and the other in the left shoulder. He remained under treatment until February 5, 1947, when he died.

In due course George Davis was indicted by the Orleans Parish grand jury for the murder of Cyril Reichert, placed on trial before a jury, by the jury found guilty as charged, and by the court sentenced to death.

For reversal of the conviction and sentence, defendant through counsel relies on five bills of exception taken during the course of the trial in the lower court and also on an "assignment of errors" filed in this court.

The first bill of exception was reserved to the trial court's refusing to sustain counsel's challenge for cause of the prospective juror Fernand J. Dansereau, Jr. Counsel objected to the juror on the alleged grounds that he had a fixed opinion as to the guilt or innocence of the defendant and was prejudiced against him, and counsel urges that, since defendant was forced to accept this juror, having exhausted all his peremptory challenges, he did not receive a fair and impartial trial before an impartial jury, as contemplated by the Constitution of this state and of the United States.

Counsel strongly objects to isolated portions of the juror's examination from which counsel concludes that the juror had formed a fixed opinion from his reading of the newspaper accounts of the crime, and that the opinion of the juror was so fixed as to the guilt of the accused that the only matter not fixed in his opinion was the punishment to be imposed.

The entire examination of this juror on his voir dire is found in the transcript. This examination discloses that the juror

was not acquainted with the accused or the deceased or any member of their respective families, and that, although he had formed an opinion from his reading of the newspapers, it was not a fixed opinion or deliberately formed, but was a mere transient one and one that would yield to the evidence heard by him during the course of the trial.

Article 351 of the Code of Criminal Procedure sets forth the proper causes for which a juror may be challenged. One of these causes is that the juror is not impartial, the cause of his bias being immaterial; but an opinion as to the guilt or innocence of the accused which is not fixed or has not been deliberately formed or which would yield to evidence or could be changed does not disqualify him as a juror.

In his per curiam the trial judge states: "Mr. Dansereau's answers to questions propounded to him on his voir dire by counsel for the state, by counsel for the defendant and by the writer convinced the writer that although Mr. Dansereau entertained an opinion as to the guilt or innocence of the accused, which he had formed from reading newspaper reports, that opinion was transient, not fixed; had not been deliberately formed; that it would not influence his verdict, and that it would yield and be changed by evidence that he would hear during the trial."

This court has stated that it is only where a prospective juror's opinion as to the guilt or innocence of the accused is so fixed that it would influence his verdict that he may be considered disqualified because of such opinion and challenged for cause; that, even though he has formed an opinion as to the guilt or innocence of the accused from reading the newspapers, the prospective juror is competent if, having no prejudice against the accused, he can lay aside that opinion, and that a prospective juror's competence or incompetence cannot be determined by isolated answers given during the course of the examination but must be judged from his entire examination. See State v. Henry, 200 La. 875, 9 So.2d 215, and cases therein cited.

■ The opinion of the juror in this case was founded merely upon what he had read in the newspapers, and, since he did not have a fixed opinion but one which would yield to the evidence, and since he would require the State to prove the guilt of the accused beyond a reasonable doubt, we conclude that he was not disqualified. State v. Brown, 4 La.Ann. 505; State v. Schnapper and Malone, 22 La.Ann. 43; State v. Hugel, 27 La.Ann. 375; State v. Coleman, 27 La.Ann. 691; State v. DeRance, 34 La.Ann. 186, 44 Am.Rep. 426; State v. Foster, 36 La.Ann. 877; State v. Ford et al., 37 La.Ann. 443, overruled on other grounds, State v. Kellogg, 104 La. 580, 29 So. 285; State v. Dent et al., 41 La.Ann. 1082, 7 So. 694; State v. Vogel, 49 La.Ann. 1057, 22 So. 308; State v.

Hebert, 104 La. 227, 28 So. 898; State v. Howard, 120 La. 311, 45 So. 260; State v. Addison, 134 La. 642, 64 So. 497; State v. Schuermann et al., 146 La. 110, 83 So. 426; State v. Birbiglia et al., 149 La. 4, 88 So. 533; State v. Henry, 200 La. 875, 9 So. 2d 215; State v. Frazier, 209 La. 373, 24 So.2d 620.

Considering the entire examination of the juror on his voir dire, we are of the opinion that he was fully qualified to serve as a juror, and that the trial judge was correct in overruling defendant's challenge for cause.

During the trial the State called as a witness Charles McSorley, the hitchhiker, who was brought into court in a wheel chair with his left arm bandaged and his left leg extended on a support from the wheel chair and covered. Counsel for the accused objected to the witness's appearing before the jury in this condition and moved to declare a mistrial on the ground that his presence before the jury prejudiced the accused. The judge overruled the objection and refused to declare a mistrial, and counsel reserved Bill of Exception No. 2.

This bill recites that the presence of the witness prejudiced the defense for the reason that the witness was not permanently injured, had been up and walking around from January 27, 1947, the date of the alleged offense, until some two weeks before the trial, at which time the witness had an operation on his leg to remove a piece of bone therefrom and transfer it to his left

arm, and that in another 10 days or two weeks from the date of the trial his leg would have been healed from this operation, and he could have walked into court; that the district attorney knew at the time he fixed the case for trial on November 17 that the witness would have to be brought into court at that time in a wheel chair, and that his presence in court in a wheel chair would create sympathy in his behalf in the eyes of the jury. trying the case and would prejudice the defendant.

■ We have carefully examined the entire testimony of this witness taken in connection with, and made a part of, this bill. McSorley, in answer to a question as to the cause of his physical appearance, stated that he was in a wheel chair because of an operation performed on his arm and leg; that a piece of bone was taken from his leg and transferred to his left arm; that this was necessary due to a gunshot wound in that arm which did not heal properly. The witness was present when the homicide for which the defendant was being tried was committed, and the fact that he himself received serious wounds from which he had not recovered at the time of the trial in no manner disqualified him as a witness, and there was no duty on the State to the defendant to postpone or delay the trial until the complete recovery of this witness.

There is no evidence whatsoever to support counsel's contention that, at the time the case was fixed for trial on November

17, this date was fixed for the deliberate purpose of producing this witness in a wheel chair to arouse the sympathy of the jury and prejudice the accused, or that the district attorney himself knew the physical condition of the witness in question.

■ It is well settled that the judge presiding over the trial of a homicide case is charged with the duty of guarding the rights of the defendant and seeing that the issues are presented to the jury in such a way that they, the jury, will not be prejudiced; that defendant is entitled to trial free of any extraneous influences which might be to the prejudice of his rights, and that it is the duty of the court to see that such extraneous influences on the jury are eliminated and are not permitted.

We are not of the opinion that the judge in the instant case failed to discharge that duty imposed upon him, for we are unable to understand how the appearance of this witness in a wheel chair prejudiced the rights of the accused, and the record does not disclose that any unfair advantage was taken by the district attorney in presenting the issues to the court and the jury.

■ Bill of Exception No. 3 recites that, after the close of the case—the defendant not having testified and the defense not having put any witnesses on the stand or offered any evidence—, the assistant district attorney in his argument to to the jury made the following statement:

"The argument is on this basis. The state cannot anticipate what defense is to be offered, therefore, some of our proof might not have been necessary. It is a simple explanation of the evidence. The state cannot anticipate any possible defense, and they prove their case as they see their case."

The defendant requested the court to instruct the jury to disregard this statement or remark of the assistant district attorney and moved the court to declare a mistrial. The court refused thus to instruct the jury, and overruled counsel's motion. This bill of exception was then reserved.

This bill does not disclose the basis of counsel's objection to this statement of the assistant district attorney. The minutes of the court reflect that counsel contended to the trial judge that the statement was prejudicial, but the record does not disclose in what manner counsel considered the remark prejudicial, and does not disclose the reasons for his objection.

The trial judge's per curiam to this bill in part reads thus:

"This court finds no merit in defendant's contention that the statement complained of in any manner prejudiced the jury against the defendant, especially in view of the fact that counsel for the defendant while examining the jurors on their voir dire explained to them exhaustively that the burden of proof was on the state to make out its case against the defendant beyond any reasonable doubt in order to justify a conviction, that the defendant did not have to become a witness in his own be-

half, and, also, that he was not required to offer any testimony whatever. Furthermore, the court in its general charge to the jury instructed them along the same lines as counsel for the defendant had questioned them.

"Therefore, the court is of the opinion that it did not err in overruling defendant's motion for a mistrial based on the complained of remarks made to the jury by First Assistant District Attorney Guy Johnson, Esq.

"The writer is of the opinion that the law and the evidence of the case have established the guilt of the accused beyond any reasonable doubt, and he has had a fair and impartial trial."

■ It is well settled that a bill of exception must state the grounds of objection and point out specifically the error complained of in order that an opportunity may be given the trial judge to correct it. If not sufficiently specific, it will not avail the party raising it. State v. Green, 36 La.Ann. 185; State v. Carroll, 160 La. 199, 106 So. 782; State v. Keife, 165 La. 47, 115 So. 363; State v. Ricks, 170 La. 507, 128 So. 293; State v. Antoine, 189 La. 619, 180 So. 465.

In argument and brief filed in this court, counsel for defendant takes the position that the remark of the assistant district attorney was made for the express purpose of doing indirectly what the law forbids doing directly, that is, that the remark

was a comment on the fact that the defendant did not take the stand in his own defense.

We entertain some doubt as to the propriety of our consideration of this bill, but, inasmuch as this is a capital case, we shall resolve that doubt in favor of the defendant. We do not think, however, that there is any merit in counsel's contention, and, although we have considered the remark of the assistant district attorney in the light most favorable to the contention of the accused, we are unable to read into it any comment on the part of the district attorney on the fact that the accused did not take the witness stand in his own defense.

In connection with this bill, the State cites the case of State v. Antoine, 189 La. 619, 622, 180 So. 465, 466, and quotes the following very pertinent language therefrom:

"The next alleged error complained of is incorporated in bill of exception No. 2, which was reserved to the overruling of defendant's objection to the following remark of the assistant district attorney: 'How has the defense combatted or met the case of the State?' The basis of this bill of exception was that the statement was an indirect comment on the fact that the defendant did not take the stand.

" 'Unless the district attorney makes the direct statement, or the inference is plain that he intended to bring to the attention

of the jury the fact that the defendant had not testified, there is no ground for complaint.' State v. Lewis, 156 La. 985, 101 So. 386, 387, and cases therein cited. See, also, State v. Glauson, 165 La. 270, 115 So. 484. In the language of this court in the case of State v. Lewis, supra, 'We find nothing in the language complained of violative of either the letter or the spirit of the law. An accused may through different sources, other than by taking the stand himself, establish a defense or offer extenuating circumstances in mitigation of the crime charged.'

"We conclude that the language complained of here cannot be fairly construed to refer to the failure of the defendant to testify, nor does it tend to create any presumption against him for his failure to do so."

The State urges also that there is no law in this state either in the Constitution or in the statutes which sanctions the rule that the district attorney and the judge must not discuss or comment on the defendant's failure to testify. In support of this contention the State has presented to the court a most interesting and lucid discussion of the historical basis for the rule in England and its evolution in this country, and a logical argument for the contention that the rule does not exist in this state. However, inasmuch as we consider that the statement of the assistant district attorney was not a comment on the failure of the accused to testify, we do not

decide the case on the basis of this contention.

Counsel for defendant filed a motion for a new trial, which was overruled by the court, and Bill No. 4 was reserved. Since the motion for a new trial merely reiterates the errors complained of in Bills Nos. 1, 2, and 3, it is unnecessary for us to discuss Bill No. 4.

Bill No. 5, taken to the overruling by the trial court of defendant's motion in arrest of judgment, presents for our consideration two questions.

The first question is whether the lower court committed reversible error in failing to name Dr. C. Grenes Cole, coroner for the Parish of Orleans, as a member of the lunacy commission appointed to examine into the mental status of the defendant as of the date of the alleged offense.

Under Article 267 of the Code of Criminal Procedure, as amended, whenever on a prosecution by indictment or information the existence of insanity or mental defect on the part of the defendant at the time of the alleged commission of the offense charged becomes an issue in the cause, the court may appoint one or more disinterested physicians, not exceeding three, to examine the defendant. Should the court make such appointment, the coroner of the parish shall be one of the phyicians appointed. Should it appear, however, that the coroner is disqualified by reason of interest or is unable

to serve for any other reason, the court may appoint some other disinterested physician to serve in his place.

Defendant contends that under the provisions of this article it is the mandatory duty of the judge to appoint the coroner a member of the lunacy commission.

The facts and circumstances giving rise to this contention are these: On March 26, 1947, the defendant through his attorney filed an application for the appointment of a lunacy commission to examine into the mental condition of the defendant as to present insanity and also as to insanity at the time of the alleged offense. The lower court overruled that part of the application for the appointment of a lunacy commission to examine into the present mental status of the defendant, but granted that part of the application for a lunacy commission to examine into the mental status of the defendant at the time of the alleged offense. As members of this commission the court appointed Dr. C. S. Holbrook and Dr. H. R. Unsworth. This commission so appointed in due course, on August 4, 1947, filed its report, finding the accused sane and responsible on the date of the commission of the alleged offense. The case was then set for trial on the merits for November 17, 1947.

On this question as presented in this bill, the trial judge has this to say in his per curiam:

"The second [first] ground on which the motion in arrest of judgment is based is

the fact that when the court appointed a lunacy commission to examine into the mental status of the accused at the time he allegedly committed the crime charged in the indictment it appointed Doctor C. S. Holbrook and Doctor H. R. Unsworth and did not appoint Doctor C. Grenes Cole coroner of the Parish of Orleans.

"The court pretermits its reasons, (except as it may be implied from what is stated hereunder), for not appointing the Coroner of the Parish of Orleans on the lunacy commission, because the defendant's objection comes too late after trial and verdict. He did not raise the issue of insanity at the trial. Furthermore, when the court appointed Doctor C. S. Holbrook and Doctor H. R. Unsworth on the commission, counsel for defendant, although notified by the court, acquiesced thereto, because Doctor C. Grenes Cole, the Coroner of the Parish of Orleans, had previously expressed an opinion adverse to the accused as to his mental status."

■■ Article 267 of the Code of Criminal Procedure, as amended, makes it plain that, if the coroner is disqualified by reason of interest or is unable to serve for any other reason, the court may appoint some other disinterested physician to serve in his place. Certainly this provision, when construed with the provision relied upon by counsel to the effect that the coroner shall be a member of such commission, gives the trial judge some discretion in appointing the personnel of the commission,

and there is no abuse of this discretion on the part of the trial judge in the instant case, since, prior to the appointment of the commission, the coroner had expressed an opinion adverse to the accused as to his mental status.

Furthermore, the question of insanity at the time of the commission of the alleged offense, being a question for the jury to determine, was not raised during the trial before the jury and was not an issue in the case, the defendant apparently accepting the report of the commission finding him sane, as he did not urge insanity as a matter of defense.

Since we have concluded that the trial judge did not abuse his discretion in appointing the members of this lunacy commission, it is unnecessary for us to discuss the question of whether defendant's objection raised by this motion in arrest of judgment comes too late—that is, after trial and verdict.

We now come to the second question presented in defendant's motion in arrest of judgment. Before the filing of his application for the appointment of a lunacy commission, the defendant with permission of the court withdrew his plea of not guilty, and thereafter was never rearraigned. He contends that, since he was placed on trial without rearraignment, the verdict rendered by the jury is illegal, null, and void, and should be set aside

The trial judge's per curiam answers defendant's contention thus:

"Defendant's allegation that he was not rearraigned is true, but the failure to formally arraign a defendant can not be questioned after he has announced his readiness for trial and the case has proceeded to verdict. Section 3 of Act No. 31 of 1926; State v. Jacobs, 195 La. 281 [196 So. 347]; State v. Broussard, 202 La. 458 [12 So.2d 218].

"When the accused was called for trial, he announced his readiness through his counsel, and the trial proceeded to its termination by verdict without objection as to arraignment.

"Therefore, the court finds no merit in defendant's contention that the trial has been invalidated because he was not rearraigned."

The authorities cited by the trial judge support his ruling.

In State v. Jacobs, 195 La. 281, 196 So. 347, 349, this court said:

"Error No. 1 assigned by the defendant is to the effect that the defendant was arraigned without the benefit of counsel. The copy of the minutes in the record shows the defendant went to trial without objection. After the defendant announced his readiness for trial the failure to formally arraign him cannot be questioned. Article 637, Louisiana Code of Criminal Procedure."

From State v. Broussard, 202 La. 458, 12 So.2d 218, 221, we quote the following:

"The last Bill of Exceptions was reserved to the overruling of the defendant's motion in arrest of judgment, the basis of which is that the defendant was never rearraigned after he withdrew his plea of not guilty in order to file a motion to quash the indictment.

"The legislature changed the rule of law 'The conviction and sentence must be set aside, where defendant was never rearraigned, after being permitted to withdraw his plea for the purpose of moving to quash the information; no issue having been joined' * * * by its adoption of Act No. 31 of 1926. The provisions of this act are that 'in all criminal cases arising under state laws and parish ordinances the defendant shall be entitled to a formal arraignment, which shall consist in reading to said defendant the indictment, information or affidavit and the ascertaining of his plea; *provided* that in no case shall more than one arraignment be necessary' (Section 1), and that 'a failure to formally arraign such a defendant shall not be questioned after he has announced his readiness for trial.' (Section 3.) (Italics ours.)

"Since the enactment of this legislation, the legislature has adopted a Code of Criminal Procedure. Therein it is provided that the 'defendant must plead when arraigned; and if he refuse, or stand mute,

the plea of not guilty shall be entered for him' (Article 255), but that 'if the defendant voluntarily enters upon the trial without arraignment it shall be considered as if he had pleaded not guilty' (Article 256)."

The trial judge's overruling of the motion in arrest was correct.

■ The assignment of errors filed in this court reiterates the objections embodied in the various bills of exception, all of which we have heretofore discussed, and raises only one new issue, that is, "That the Trial Judge in his charge to the Jury, did not charge the Jury, upon the law of 'Attempted Murder, Attempted Manslaughter, or Attempted Negligent Homicide' ".

So far as the record shows, no bill of exception was reserved or objection made to the charge to the jury given by the trial judge. Article 391 of the Code of Criminal Procedure provides that every objection to the charge given or to a refusal to charge as requested shall be by means of a bill of exception reserved before the jury shall have retired to deliberate upon its verdict, and that the bill of exception shall be accompanied by such a statement of facts as shall show the error in the charge given or in the refusal to charge as requested.

In State v. Stracner, 190 La. 457, 182 So. 571, 576, the defendant, although he had failed to request certain charges of the judge and had failed to except to the omission of the trial judge to give such charges,

filed an assignment of error in this court after the transcript was lodged here, in which he complained of the charge as given. This court refused to consider the assignment of error, and, after quoting Article 391 of the Code of Criminal Procedure, said:

"This rule was in effect prior to the adoption of the Code of Criminal Procedure. The reason for the rule is that it is not considered proper that the defendant should be permitted to sit idly by while the judge is making an erroneous charge to the jury, take his chances upon the verdict, and, if against him, then by assignment of error or motion in arrest take advantage of it. State v. Daleo, 179 La. 516, 154 So. 437.

"As the judge's charge is not a part of the record, an assignment of error relating to the charge cannot be considered on appeal, since an assignment of error must be based on errors patent on the face of the record. Code Cr.Proc. art. 560; State v. Daleo, supra. For these reasons the court cannot consider the assignment of error."

In State v. Daleo, 179 La. 516, 154 So. 437, 441, the defendant also filed in this court an assignment of errors relating to the judge's charge to the jury. In that case we stated:

"Within due time, after the filing of the transcript of appeal in this court, defendant filed an assignment of errors. These errors all relate to the judge's charge. As the judge's charge is not a part of the record, the assignment of errors does not reach it, for an assignment of errors, like a motion in arrest of judgment, must be based on errors patent on the face of the record. Code Cr.Proc. art. 560."

The transcript as filed in this court did not contain the lower court's charge to the jury. After the order of appeal had been granted and the transcript lodged here, appellant filed a motion in the district court and, over the opposition of the State, obtained the following order: "It is ordered by the court that the Honorable Edward A. Haggerty, clerk of the Criminal District Court for the Parish of Orleans, or one of his deputies, make and file with the Supreme Court of Louisiana, (if that court permits it), three certified copies of the charge I delivered to the jury at the trial of the accused George Davis." Pursuant to this order, the judge's charge to the jury was filed in this court on September 22, 1948.

The State argues that we cannot consider this charge in connection with the assignment of errors for the reason that the lower court was without jurisdiction to render such an order under Article 545 of the Code of Criminal Procedure, which provides that, after an appeal has been granted, no further action in the case can be taken by the trial judge, provided that as to matters ministerial or not in controversy the trial court may render interlocutory orders and

definitive judgments, and under the rule of this court in State v. Brown, 214 La. 18, 36 So.2d 624, in which we held that this court could not consider the judge's per curiams to various bills of exception taken in that case for the reason that the per curiams were not filed by the district judge until after he had granted to the defendant the order of suspensive appeal, the basis of this ruling being that the lower court lost jurisdiction of the case and could take no further action therein after the order of appeal had been granted.

The argument of the State may be perfectly sound and meritorious, but as to this it is unnecessary for us to decide. The law of this state is well settled that, even though the charge itself is in the record or transcript, any objection thereto cannot be considered by this court not made at the time the charge was given and before the jury retires to deliberate upon its verdict. State v. Bradford, 167 La. 827, 120 So. 382; State v. Henderson, 168 La. 487, 122 So. 591; State v. Abeny, 168 La. 1135, 123 So. 807; State v. Louviere, 169 La. 109, 124 So. 188; State v. Ricks, 170 La. 507, 128 So. 293; State v. Johnson, 171 La. 95, 129 So. 684. The contention set forth in the assignment of errors in the case at bar is therefore without merit.

For the reasons assigned, the conviction and sentence are affirmed.

O'NIELL, C. J., not participating.