## EYER v. BRADY, Warden.
### No. 4960.

Circuit Court of Appeals, Fourth Circuit.

June 27, 1942.

O. Bowie Duckett, Jr., and George Cochran Doub, both of Baltimore, Md., for appellant.

William C. Walsh, Atty. Gen., of the State of Maryland, and Robert E. Clapp, Jr., Asst. Atty. Gen. of the State of Maryland (J. Bernard Wells, State's Atty., and Morton E. Rome, Asst. State's Atty., both of Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PER CURIAM.

The petitioner applied to the District Court for a writ of habeas corpus directed to the Warden of the Maryland Penitentiary where he was confined under a sen-

tence of fifteen years imposed by the Criminal Court of Baltimore City upon conviction by a jury of the crime of robbery. The writ was issued, but after hearing, the District Court, being of the opinion that the petitioner was lawfully confined under the sentence, dismissed the writ and ordered him remanded to the custody of the warden. An appeal was taken to this court and although no certificate of probable cause was issued, as required by the federal statutes, 28 U.S.C.A. § 466, the petitioner was allowed to present his appeal to this court in forma pauperis, and at his request counsel were appointed by this court to represent him. They have ably presented his case both in written brief and oral argument, and have earned the thanks of the court.

The appeal is based upon the contentions that the petitioner was not accorded a fair opportunity to secure counsel or prepare his defense in the Criminal Court of Baltimore City, and that he was denied the right to testify in his own behalf. We proceed to examine the merits of these contentions, overlooking the failure of the petitioner to assert them in the courts of Maryland, (see, Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 l .Ed. 791, 98 A.L.R. 406; Hall v. California, 9 Cir., 79 F.2d 132; McCauley v. Goldberg, 9 Cir., 91 F.2d 1016), and also the concession that even if it should be found that the petitioner was denied due process in the pending case, he would nevertheless not be entitled to discharge from the Maryland Penitentiary but would be necessarily remanded to the custody of the warden to serve consecutive sentences of eighteen months each imposed in two companion cases by the same court and to begin at the expiration of the sentence now under consideration.

The facts presented to the District Court were stipulated by counsel. Eyer was 43 years of age when tried in the Criminal Court of Baltimore City, and was familiar, by experience, with court proceedings. He was convicted of assault with a deadly weapon upon a policeman in 1922 in California, and was sentenced to San Quentin Prison for an indeterminate sentence not exceeding 10 years. He escaped in 1924 and was arrested in 1931 in Chicago whence he was extradited to Connecticut, where he was tried and convicted for an assault with intent to murder two police officers and was sentenced to a term of from 15 to 20 years in the penitentiary;

but on appeal, the Supreme Court of the State reversed the conviction and granted a new trial. Thereafter he pleaded guilty to the charge and was sentenced to serve from 2 to 5 years in the State Penitentiary. After serving this sentence, he was returned to California to finish the uncompleted sentence in that State and was released from custody on February 10, 1941. On March 29, 1941 he was arrested in Baltimore and charged with the commission of a robbery of $1,700 and with assault on police officers in an attempt to escape. He was indicted on April 2, arraigned on April 4 and tried and convicted in a trial which began on April 9 and ended on April 11, 1941. The sentence complained of was imposed on the 29th day of May, 1941.

■ When he was arraigned on April 4, the judge told him that the charge against him was a serious one and offered to appoint a lawyer to defend him at the expense of the State, but he declined the offer. He later testified during the course of the hearing on habeas corpus that he declined the offer because he was confused as he had spent three sleepless nights at the police station and had been later isolated in the Baltimore City Jail. However, he objected to the inclusion of aliases in the indictment on the ground that he had not used them and they would prejudice him before the jury, and they were stricken out with the consent of the State's Attorney. The petitioner also noted and argued a demurrer to the indictment which was overruled. An interval of five days elapsed between the arraignment and the trial. Under these circumstances, the District Judge properly found that there was no reason to believe that the petitioner refused counsel at his trial in the State Court because he was confused. It is obvious that he voluntarily waived the right to counsel, preferring to try his own case, and that in this respect there was no denial of due process, as expounded in the decision rendered by the Supreme Court of the United States in Betts v. Brady, 62 S.Ct. 1252, 86 L.Ed. ——, on June 1, 1942.

■ Nor was there any denial to the petitioner of a fair opportunity to prepare his defense, such as amounted to a denial of due process and was discussed in cases like Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, Jones v. Commonwealth of Kentucky, 6 Cir., 97 F.2d 335, etc. During the five day interval between the arraignment and

trial, the petitioner was in jail but he made no effort to secure the attendance of witnesses; and when he was brought into court to be tried, he made no effort to obtain a postponement in order to prepare his defense. There is indeed no reason to believe that he could have made an adequate defense. After his conviction on the robbery charge, he requested the judge to appoint counsel to represent him at his trial of the indictments for assault, which involved the charge that he was one of three men who had shot at the police car while escaping from the scene of the robbery. In response to this request the judge appointed a skillful and experienced attorney. The cases were tried before the court without a jury with the stipulation that the testimony in the robbery case should be considered as testimony in the assault cases; and the State also produced the police officers to testify as to the direction and angle of the shot that was fired. The petitioner did not testify and offered no testimony on his behalf, and he was convicted and sentenced as aforesaid. Any testimony that would have exculpated him from these charges would have been relevant under the indictment for robbery, but no such testimony was forthcoming, and it is only reasonable to conclude that none existed.

█ The issue at the three day trial for robbery was whether the petitioner was one of three holdup men who participated in the robbery in Baltimore on March 29, 1941, and later fired at police officers in attempting to effect their escape. During the course of the trial he called a number of witnesses to testify on his own behalf but elected not to testify himself. After the testimony on both sides was closed, the case was argued for the State by an Assistant State's Attorney and thereafter was argued at some length by the petitioner himself. During the course of his argument he stated that an overcoat which the State contended connected him with the robbery did not in fact belong to him. As there was no testimony to this effect in the case, the court, on objection of the State, refused him permission to make this statement. Later, on objection of the State, the court refused him permission to make a comparison of his handwriting with certain handwriting on a paper found in a pocket of the overcoat and claimed by the State to have been written by him. He also attempted to state that a

hat and a shotgun believed to have been used by some one in the commission of the crime were not his, but on objection, he was not permitted to do so. He then requested permission to take the witness stand and testify on his own behalf, but this request was denied by the judge on the ground that the petitioner had refused the opportunity to testify accorded him during the trial, and that the testimony had been closed and the argument before the jury had been begun.

Upon these circumstances, it is contended that the refusal to permit the petitioner to testify was a denial of due process that requires his discharge from custody. In our view the matter was one within the sound discretion of the trial judge and his action, even if reviewable on appeal, did not constitute such lack of due process as to warrant a federal court in releasing a State prisoner. In this respect we concur in the views of Judge Chesnut set out as follows in his memorandum opinion:

"The other reason advanced by the petitioner here in support of his contention as to lack of due process in the robbery case, is more unusual. Of course a defendant in a Maryland criminal case has the right to be heard in his own defense. Although denied the right to be a witness for himself at common law in serious cases a defendant has for a long past time been entitled to testify as a witness for himself in England and generally in American law, in all criminal cases. Maryland Code, Art. 35, § 4. Clearly the refusal to allow a defendant in a criminal case to testify under oath as a witness in his own behalf in Maryland, and probably all of the States of the United States, would now be regarded as a serious error in the trial requiring a reversal; and it may be assumed, without deciding, that such an error in a state prosecution would constitute sufficient lack of due process under the 14th Amendment to the Federal Constitution to justify the release of the defendant by a federal court on habeas corpus, provided the election of the defendant to testify was seasonably made in the course of the trial. But it does not follow that there was a lack of due process in the particular trial in the circumstances stated. The defendant tried his own case, called witnesses in his behalf, knew that he was entitled to testify for himself as a witness but elected not to do so, closed his testimony, argument had been made for the State, and the defendant

only offered to testify for himself toward the conclusion of his following argument of the case when he was checked by the judge for making statements of fact to the jury not supported by the evidence. While possibly the judge might well in his discretion have permitted the testimony to have been reopened even at that late stage of the case, he was clearly not obliged to do so in view of the fact that the testimony had been closed, and particularly in the absence of any suggestion of mistake or inadvertence. This was a matter within the discretion of the trial judge, probably not constituting error in the trial on a direct proceeding by appeal, and clearly not constituting such lack of due process as to warrant this federal court in releasing a State prisoner otherwise duly convicted.

"* * * From the history of the English criminal procedure we know that while at common law in some serious cases the defendant was not permitted to testify as a witness, nevertheless to mitigate the severity of the rule the privilege was accorded to him in some cases to make an unsworn statement to the jury not subject to cross-examination. 1 Wharton on Criminal Evidence (10th ed.) §§ 427, 428. Whether such a privilege still exists, in view of the general statutory permission to the defendant to testify in criminal cases, is indeed doubtful, unless expressly permitted by statute. There have been apparently few decisions on the point and I know of none in Maryland or the federal courts. Such permission has, however, been denied in some cases. State v. Louviere, 169 La. 109, 124 So. 188; Com. v. Scott, 123 Mass. 222, 25 Am.Rep. 81. See, also, 23 C.J.S., Criminal Law, § 1026; Wigmore on Evidence, 2d ed., Vol. I, § 579. The better view would seem clearly enough to be that as the permission to make a sworn statement without cross-examination was only a consequence of the rule declaring the incompetency of the defendant in criminal cases as a witness, the reason for the permission to make an unsworn statement ceased with the abolition of his incompetency as a witness. In Maryland criminal procedure it has not been the practice in either state or federal courts for the defendant to make an unsworn statement in lieu of testifying as a witness, and in consequence being subject to cross-examination, although there have been many cases in which the defendant acting as his own counsel has, of course, been freely permitted to argue his case before the jury with great liberality on the part of the court as to the scope and subject matter of the argument.

"But however that may be, the instant case does not present the particular question. The defendant did not request the right to make an unsworn statement but as counsel for himself was proceeding to argue to the jury matters of fact not supported by the evidence. It was clearly within the discretion of the trial judge to decline to permit this to be done."

The order of the District Court is affirmed.