STATE EX REL. EYER *v.* WARDEN OF MARYLAND PENITENTIARY

[H. C. No. 38, October Term, 1947.]

*Decided May 21, 1948.*

Before DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

MARKELL, J., delivered the opinion of the Court.

This is an application for leave to appeal from refusal of a writ of habeas corpus. Petitioner is imprisoned under consecutive sentences of fifteen years for robbery with a deadly weapon and eighteen months each in two cases for assault with intent to murder a police officer. On March 29, 1941 three "hold-up men" participated in a robbery and later fired at policemen in effecting their escape. The same day petitioner was arrested and subsequently charged with the robbery. On April 2d he was indicted for robbery and assault. On April 4th he was arraigned in the robbery case and demurred to the indictment. On April 7th the demurrer was argued, on petitioner's objection the "aliases" incorporated in the indictment were ordered stricken, and petitioner then pleaded not guilty and prayed a jury trial. He says, "Offer of counsel was made by the court which petitioner declined due to his confused state of mind. Prior to the arraignment, he had been kept sleepless for three days and nights by the police in the Central Police Station and thereafter had been isolated in the Baltimore City Jail in a separate cell and had been kicked and mistreated by the police. His mind was confused at the time of arraignment and the entire setting seemed to be hostile to him." Trial was begun on the morning of April 9th and concluded late the next night. On May 16, 1941 petitioner requested appointment of counsel in the assault cases and the court appointed able counsel, especially experienced in criminal cases. On May 19th and 20th the assault cases were tried before the court without a jury, with a stipulation that the testimony in the robbery case should be considered as testimony in the assault cases, and petitioner was found guilty. He did not testify and offered no testimony on his behalf. On May 29, 1941 sentence was imposed in the three cases. In all three cases apparently the only issue was identifi-

cation of the "hold-up men", *i. e.*, of petitioner as one of them. He asserts an alibi, *viz.*, that at the time of the robbery he had been "given a lift" from Washington to Baltimore by an unknown driver of an unknown automobile, but he was not able to produce the driver at the robbery trial—and apparently never has located him—and he himself did not testify or offer to testify to this alibi.

Petitioner now alleges that he is confined without due process of law on the judgment in the robbery case, because (1) he made no intelligent and competent waiver of counsel, (2) the court refused to grant him an opportunity to prepare for his defense, (3) to permit him to testify on his own behalf or (4) to make an unsworn statement to the jury, and (5) the "manner and order of consecutive sentences" was illegal. The fifth ground has not been elaborated or explained.

The first, third and fourth grounds were the basis of a habeas corpus case before Judge Chesnut, heard in February 1942. In that case petitioner testified and on March 4, 1942 the writ of habeas corpus was dismissed on the merits (notwithstanding failure to exhaust State remedies) with an opinion published in the Daily Record on March 18, 1942. On June 27, 1942 on appeal this decision was affirmed on the merits, after argument by able counsel for petitioner appointed by the Circuit Court of Appeals. *Eyer v. Brady*, 4 Cir., 128 F. 2d 1012, *certiorari* denied November 9, 1942, 317 U. S. 679, 63 S. Ct. 157, 87 L. Ed. 545. In June, 1943 and November, 1943 hearings on writs of habeas corpus were held before Judges Melvin and Grason, respectively, of this court, and petitioner was remanded. On January 4, 1944 Judge Marbury of this court denied a petition for a writ of habeas corpus on the second, third and fourth grounds now alleged, with an opinion published in the Daily Record on January 13, 1944. Petitioner says substantiation of his present assertions of fact will be found in his testimony before Judge Melvin. What issues were heard before Judge Grason does not appear.

A transcript of the proceedings in the robbery case is not filed with the petition, though petitioner says copies of the transcript of testimony were furnished, and a transcript of all other proceedings offered, to counsel in the Circuit Court of Appeals "through the courtesy and by the order" of the trial judge, and an excerpt from the proceedings is quoted. Nevertheless petitioner complains of "most flagrant errors" in the stipulation as to facts by counsel in the appellate court, and asserts that "versions, garbled beyond my personal knowledge as to submitted and undisputed facts, emerge weird and unrecognizable when shaped into 'opinions' ". Petitioner's complaints of "errors" in the stipulation relate to the third and fourth grounds of the instant petition. Most of these complaints are arguments, not as to the accuracy of the stipulation but as to the relevancy of the assault cases to the robbery case. The only alleged inaccuracies in the stipulation are (*a*) that the robbery trial lasted two days, not three, (*b*) that at the trial petitioner was not asked by the judge whether he wished to take the witness stand when testimony was being taken, or informed that he could do so, and (*c*) that during his argument before the jury the court, of its own motion and not on objection of the State, stopped him making statements of fact not based on evidence but purporting to be based on his own knowledge. We think these alleged inaccuracies are now immaterial and from the opinion of the Circuit Court of Appeals played no material part in that court.

Concerning the third and fourth grounds of the instant petition Judge Chesnut found as facts, from the evidence before him: "In the course of the trial the defendant, Eyer, at first demurred to the indictment and personally argued the demurrer in his own behalf at some length. It appears that he was not unfamiliar with court proceedings as he had been defendant in at least two other criminal cases in other jurisdictions in which he had been convicted of serious offenses. During the course of his trial in the Criminal Court of

Baltimore on the robbery charge he called a number of witnesses to testify on his behalf but elected not to testify himself. After the testimony on both sides had been closed the case was argued for the State of Maryland by Mr. Rome, Assistant State's Attorney of Baltimore City, and thereafter was argued at some length by the defendant for himself. During the course of the latter argument the defendant made statements of fact to the jury which were not supported by the evidence and apparently were based on his own individual knowledge alone. The Judge told him that he could not make such statements of fact not supported by the evidence in the case as he had personally not testified as a witness. The defendant then stated that he was ready to testify as a witness but the Judge declined to reopen the case at that stage as the testimony had been closed." Assuming, without deciding, that petitioner might in the instant case controvert these findings, he does not do so. His assertions are not inconsistent with these findings. In the circumstances we take these findings as facts. On these facts there was no lack of due process. Petitioner does not say he was ignorant of his right to testify. He argues in effect that he must have thought he could testify in argument before the jury. He had no warrant for thinking so and did not at the time assert any such misunderstanding. We may assume, for sake of argument, that the trial judge in his discretion might have reopened the testimony to permit him to testify, or might have "freely permitted him to argue his case before the jury with great liberality" with little regard for the distinction between argument and testimony, that the exercise of discretion in these respects was reviewable on appeal, and that the common law practice (rare, if not unheard of, in Maryland) of permitting a defendant to make an unsworn statement to the jury is still available notwithstanding the right to testify. Art. 35, sec. 4. Even on these broad assumptions, it is clear that petitioner did not ask the privilege of making an unsworn statement and had no right to have the testi-

mony reopened to permit him either to testify or to make such a statement. Reversible error in this exercise of discretion not to reopen the testimony would not constitute lack of due process. On this branch of the instant case we refer to Judge Chesnut's opinion, quoted by the Circuit Court of Appeals (128 F. 2d at page 1014, 1015), in which we fully concur.

Assuming, without deciding, that notwithstanding the Act of 1945, ch. 702, Art. 42, sec. 3A, Code 1947 Supplement, the doctrine of *res judicata* does not extend to a decision on habeas corpus refusing to discharge a prisoner, nevertheless such a decision is not without weight on a later application. *Salinger v. Loisel,* 265 U. S. 224, 230-232, 44 S. Ct. 519, 68 L. Ed. 989. Art. 42, sec. 3A. Judge Chesnut found as a fact that petitioner "intelligently and competently waived the appointment of counsel." He found "no adequate basis in the evidence here" for the contention that petitioner declined the appointment because "he was at the time confused" and "the whole setting seemed to be hostile to him." In the instant case his contention is the same—plus mistreatment by the police. His three sleepless days and nights in the Police Station expired on April 1st, three days before arraignment and eight days before trial. We cannot infer or assume that he was "kicked and mistreated by the police" while he was "isolated in the Baltimore City Jail". He was not too confused to argue his demurrer on April 7th. He did not at or before the trial complain of confusion or mistreatment or ask to change his decision declining appointment of counsel. Apart from the hearing before Judge Chesnut—a *fortiori,* in view of that hearing and Judge Chesnut's finding—we think the instant petition fails to state facts showing any denial of the right to counsel. Petitioner did not merely waive the right; he flatly declined it when offered to him.

As the second ground of the instant petition, petitioner complains that on the morning of April 9th, before his trial began, he asked, and was denied, a postpone-

ment in order that he might have an opportunity to prepare for his defense. He stressed his helplessness, in jail, without counsel or friends, and the need to locate the unknown driver of the automobile. His lack of counsel was his own choice. The unknown driver never was located, even after appointment of counsel in the assault cases. Five days had elapsed between arraignment and trial. The petition shows no abuse of discretion, much less lack of due process, in denying postponement.

*Application denied, without costs.*