**144 So. 600**

**STATE v. LINAM.**

**No. 31827.**

Oct. 31, 1932.

Rehearing Denied Nov. 28, 1932.

J. Rush Wimberly, of Arcadia, and Stephens & Stephens, of Coushatta, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and S. R. Thom-

as, Dist. Atty., of Natchitoches (James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

## ODOM, J.

Defendant was convicted of the crime of involuntary homicide as denounced by Act No. 64 of 1930, and appealed.

We find in the record three bills of exception, two of which were retained during the progress of the trial and the third to the refusal of the court to grant a new trial.

Bill No. 1 was reserved to certain remarks made by the district attorney in the course of his argument. He used the following language:

"Gentlemen of the Jury, admitting that the young man who was killed in this unfortunate accident was negligent or possibly was not operating the Chevrolet Automobile as he should have been, the law does not excuse this Defendant for his gross recklessness and gross negligence in the manner in which he was operating his automobile, which caused the death of these three people. Suppose some criminal entered your home and robbed your daughter of her virtue, suppose a rapist should enter your home and rob your daughter of her purity."

Whereupon counsel for defendant made objection and requested the court to instruct the jury to disregard the remarks. The court did not in specific terms tell the jury to disregard the remarks of the prosecuting attorney, but did give the following instruction:

"Gentlemen, it is your duty to decide this case by the testimony heard and not upon any argument made by counsel. It is your duty to listen to the argument, but decide the case from the testimony but not from the argument of counsel."

Counsel for defendant made no appearance in this court to argue the case orally, nor have they filed briefs. But in the bill reserved we note that it is stated by them that the instruction which the court gave the jury was tantamount to a refusal to instruct the jury to disregard the statements objected to.

We cannot subscribe to this view. What the judge said to the jury was that it was their duty to decide the case according to the testimony and not according to what the prosecuting officer said. That is tantamount to instructing them to disregard the remarks in so far as they might have weight with them in determining the issue of guilt or innocence of the accused. The jury could not have misunderstood the court's instructions.

Besides, there was nothing improper about the first portion of these remarks. What the district attorney said is true as a matter of law. The only part to which there could be any objection is the following:

"Suppose some criminal entered your home and robbed your daughter of her virtue, suppose a rapist should enter your home and rob your daughter of her purity."

Apparently the speaker was interrupted. At least, he made no point. These were mere idle remarks which bear no relevancy whatever to the issue involved, and we cannot see how such remarks could have influenced the jury. Courts must give jurors credit for possessing ordinary intelligence and cannot presume that idle, irrelevant remarks made by

the district attorney influence them in arriving at their verdict.

This court will not set aside the verdict of a jury in a criminal case on the ground of improper remarks made by a prosecuting attorney in the course of his argument unless thoroughly convinced that such remarks influenced the jury and contributed to the verdict. State v. Young, 114 La. 686, 38 So. 517; State v. Forbes, 111 La. 473, 489, 35 So. 710; State v. Fourchy, 51 La. Ann. 228, 241, 25 So. 109; State v. Jones, 51 La. Ann. 103, 24 So. 594.

We find no merit in this bill.

■ Bill No. 2 was reserved to the refusal of the court to give the following special charge:

"I charge you that if you find from the facts in this case that the deceased, or that the driver of the car in which the deceased were riding, by his negligence brought about the condition which resulted in the death of the deceased, this defendant should not be convicted."

The refusal of the court to give this charge was correct for two reasons. The first is that the court in its general charge had instructed the jury that in order to obtain a conviction the "state must establish to your satisfaction, beyond a reasonable doubt, that he (the accused) by the operation or use of a vehicle in a grossly negligent or grossly reckless manner, but not wilfully or wantonly, caused the death of the persons set forth in the bill of information." In speaking of the kind of negligence necessary to be shown in order to sustain a conviction, the judge in his general charge said: "It means excessive negligence. It signifies negligence or recklessness of an exaggerated character." And finally he said: "But it (the state) must establish, beyond a reasonable doubt, that the defendant was guilty of operating a car in a grossly negligent or grossly reckless manner and *such operation caused the death of the parties named in the bill of information*." (Italics are the writer's.)

By giving the charge in this language, the court instructed the jury that the burden was upon the state to prove not only that accused was operating his car in a grossly negligent and reckless manner, but that his operation of it in such manner caused the death of the parties named in the bill. The charge was correct and was very favorable to the accused. It was equivalent to saying that if the driver of the car in which the deceased were riding "by his negligence brought about the condition which resulted in the death of the deceased this defendant should not be convicted."

The court having charged that defendant could not be convicted unless it were shown by the state that his gross negligence and recklessness caused the death of the deceased, the jury could not reasonably draw any conclusion other than if the negligence of the driver of the car in which the deceased were riding brought about their death, the defendant could not be convicted.

The substance of the requested charge was therefore given in the principal charge.

■ In the second place, there is no suggestion or intimation that there was any evidence tending to show that the driver of the car in which deceased were riding was guilty of any negligence whatever. The requested charge was therefore not pertinent.

It had no foundation to support it, and was wholly irrelevant.

Article 391 of the Code of Criminal Procedure provides that:

"Every objection * * * to a refusal to charge as requested * * * shall be accompanied by such a statement of facts as shall show the error * * * in the refusal to charge as requested."

In the absence of a statement of facts which shows the error complained of, this court will presume that none such existed and will not disturb the ruling of the trial court.

Bill No. 3 was reserved to the ruling of the court in refusing a new trial. The grounds set up for a new trial are:

First, that the verdict of the jury was contrary to the law and the evidence. This allegation presents nothing for review.

Second, that the sheriff, who had the jury in his charge or under his control after the case was submitted, went into the jury room in violation of the law, and "instructed the jury, or participated or consulted about how the verdict should be written, which was grossly improper and greatly to the prejudice and injury of your defendant."

As regards this allegation, it suffices to say that on trial of the motion, the defendant utterly failed to prove his charges. The testimony of the sheriff and that of each of the jurors was that after the jurors had unanimously agreed upon the verdict to be rendered, the sheriff was signaled to come to the door of the jury room. He opened the door, but it is not clear that he went into the room. He was met at the door by the foreman, who held the bill of information in his hand, and who asked the sheriff on what part of the bill the verdict should be written. The sheriff, without uttering a word, pointed to the back of the bill and retired. That was all. There was no discussion or consultation as to how the verdict should be written, but only as to where it should be written on the bill.

There was no prejudicial error committed. In State v. Bryan, 175 La. 422, 143 So. 362, 373, decided by this court on July 20, 1932, it was shown that a deputy sheriff was called by the foreman of the jury and asked how to word the verdict and the deputy sheriff told him. We held that while this was error, "the error was not serious enough to justify our setting aside the verdict."

The only other grounds set up have been disposed of under bills Nos. 1 and 2.

For the reasons assigned, the verdict and sentence are affirmed.