182 So. 571

**STATE v. STRACNER.**

No. 34758.

May 30, 1938.

Rehearing Denied June 27, 1938.

Griffin T. Hawkins and Joe J. Tritico, both of Lake Charles, for appellant.

Gaston L. Porterie, Atty. Gen., James O'-Connor, First Asst. Atty. Gen., and C. V. Pattison, Dist. Atty., and Coleman D. Reed and John H. Martin, Asst. Dist. Attys., all of Lake Charles, for the State.

ROGERS, Justice.

B. K. Stracner was indicted and tried for the murder of William H. Gill. He was found guilty of manslaughter and sentenced to a term of from two to six years in the state penitentiary and to pay a fine of $500 and costs. From his conviction and sentence defendant has appealed.

During the course of the trial, defendant reserved twenty-one bills of exception and in this court he has filed an assignment of error.

Defendant has expressly abandoned bills of exception Numbers 2, 4, 5, 14, 15 and 18, leaving for the consideration of this court fifteen bills of exception and the assignment of error.

We shall consider the remaining fifteen bills of exception in their numerical order. The assignment of error last.

Bill No. 1. While Mrs. Tom Mooney, a witness for the state, was on cross-examination, counsel for defendant asked her if she had seen Spencer Wilcox at the scene of the killing in the afternoon of the day of the killing.

The homicide with which defendant is charged occurred between 11 o'clock A. M. and 12 o'clock M. Counsel for the state objected to the question as irrelevant and immaterial. The trial judge sustained the objection, assigning as his reason therefor that according to the testimony of the witness the presence of Wilcox at the scene of the killing was several hours after the killing had occurred and it could have no relevancy as to the guilt or innocence of the defendant.

The evidence must be relevant to the material issue. Crim.Code Proc. art. 435.

The question of excluding evidence because of irrelevancy rests largely in the discretion of the trial judge. State v. Bouvy, 124 La. 1054, 50 So. 849.

We find no reason to disturb the ruling of the trial judge. There is nothing in the bill of exception disclosing or explaining the connection of the question with the material facts.

Bill No. 3. On cross-examination, counsel for defendant propounded to Carl Harmon, a witness for the state, a series of questions for the purpose of showing that the deceased had passed the house of the witness twenty minutes before the fatal shooting and that he was trying to find the defendant and that he was drunk.

On objection by counsel for the state, the testimony sought to be elicited from the witness was excluded, on the ground it was calculated to show threats and a dangerous condition of the mind of the deceased, and no foundation for its admission had been made by proof of an overt act or hostile

demonstration on the part of the deceased towards the defendant at the time of the fatal shooting. The record bears out the statement of the trial judge. We find no error in the ruling.

Bill No. 6. Defendant testifying in his own behalf stated that he had known the deceased all his life and that he thought the deceased was between 50 and 55 years of age. He was then asked the following question: "Q. Do you know at the time what he was doing, what kind of work he was doing?" The state objected to the question as irrelevant and immaterial, and the objection was sustained by the trial judge. The ruling was correct.

Evidence of the deceased's occupation was wholly irrelevant, without adequate explanation of its purpose. The statement by counsel for the defendant at the time, that the question was propounded to show that the deceased was engaged in hard manual labor is not a sufficient showing of the logical relation between the proposed evidence and the material facts in issue to justify its admission.

Bills Nos. 7, 8, 9, 10, 11, 12 and 13 may be considered together as the same question of law is raised in all the bills. They involve defendant's complaint that the trial judge erred in excluding on the state's objection evidence concerning previous communicated threats, the dangerous character of the deceased, two previous attempts by the deceased upon defendant's life, uncommunicated threats, and that the deceased had previously pleaded guilty to shooting with intent to kill and the evidence pertaining thereto. The proposed evidence was ex-

cluded by the trial judge, because, in his opinion, no overt act or hostile demonstration on the part of the deceased had been shown. The opinion and ruling of the trial judge is set forth in his per curiam covering all the bills, which reads as follows, viz.:

"This Court is of the opinion that under the law and jurisprudence of this State, evidence of prior threats or of dangerous character of the deceased is inadmissible until it is shown to the point of reasonable sufficiency that an overt act, or actual physical attack or hostile demonstration on the part of the deceased was made on the accused at the time of the killing, and that such overt act or hostile demonstration was of such a nature as would indicate to a reasonable person that the accused was then and there in apparent and imminent danger of losing his life or of receiving great bodily harm.

"This Court is further of the opinion that whether or not there has been sufficient evidence of an overt act or of a hostile demonstration on the part of the deceased on the accused at the time of the killing to serve as a foundation for the introduction of evidence of previous threats or of dangerous character of the deceased is a question of law to be decided by the Judge and not by the jury.

"This Court is further of the opinion that the evidence in this case of an overt act or physical attack or hostile demonstration on the part of the deceased toward the accused at the time of the killing has not been shown to the point of reasonable sufficiency to be of such a nature as to indicate to a reason-able person that the accused was in apparent and imminent danger of losing his life or of receiving great bodily harm.

"This Court, therefore sustained the objection to the introduction of this line of evidence."

■ The statutory law and settled jurisprudence of this state are that in the absence of proof of a hostile demonstration or of an overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against the defendant is not admissible. Code Crim.Proc. art. 482; State v. Washington, 184 La. 544, 166 So. 669.

■ And the proof of such hostile demonstration or overt act must be to the satisfaction of the trial judge, subject to review by this court. State v. Boudreaux, 185 La. 434, 169 So. 459; State v. Scarbrock, 176 La. 48, 146 So. 264; State v. Brown, 172 La. 121, 133 So. 383.

Gill, the deceased, was shot twice. The first shot went through his left arm and through his body. The second shot entered his back and came out through his breast bone. The wound resulting from either shot was sufficient to cause Gill's death.

The testimony offered by the defendant before the jury clearly indicates that he relied upon a plea of self-defense to justify the homicide.

Defendant, in his own behalf, testified in substance that he went to the house referred to in the testimony as the Mexican's house, in front of which the killing took place. He walked upon the porch of the Mexican's house and sat upon a little bench or swing,

and that Gill, the deceased, came to the edge of the porch and said good-morning, and that all spoke to him. Gill set his foot on the edge of the porch and propped his chin in his left hand. Gill looked straight at him and it looked like Gill was mad and was drinking. Gill kept standing there and gazing at defendant and put his hand in his pocket. Every once in a while defendant could see deceased's right hand moving in his pocket like he was fixing something. Defendant sat on the porch until he got so nervous he could not stand it any longer. He got up and started for his car, Gill following him and saying he wanted to talk to him. Defendant told Gill he was in a hurry and did not have time to talk to him and would see him later. Gill said no, "By God you are going to talk to me right now for the last time." Defendant kept walking to the car, and Gill followed cursing him about his folks picking cotton for him. Defendant started to get into the car. Gill held the car door. When defendant reached to switch the key, Gill turned the door loose and hung his fingers in defendant's shirt collar and "busted the top buttons off." Defendant got loose and fell back in the car where he had his pistol, poked it in front of him and fired. Gill looked like he was coming into the car when the first shot was fired. Defendant fired the second shot two or three seconds later. Defendant could not see where Gill was for the smoke and he just pulled the trigger.

Defendant further testified that he had been carrying a shot gun and a pistol in his car in plain view for many years. He is a sheep raiser and he carried the shot gun

for the purpose of shooting hawks and buzzards that preyed upon his sheep. He owned the pistol with which Gill was killed for about eighteen years and he had carried it for many years under commissions which he held from the mayor of the town and the sheriff of the parish. The fact that he carried the weapons was well known to everybody.

Earl Foreman, a thirteen year old boy, drove up to the Mexican's house with Stracner in the latter's car. His testimony is to a large extent corroborative of the testimony given by Stracner. The witness also testified that Gill had a knife in his hand all the time he was walking from the Mexican's house to the car. That just before the shooting when Gill reached into the car with his left hand to grab Stracner it looked as if at the same time he was pulling his right hand out of his pocket. On cross-examination the witness stated that when he first saw the knife it was in Gill's right hand, but it was not open and that Gill put it in his pocket.

Stracner, the defendant, testified, however, that, although he figured Gill had a knife or a weapon, he did not see a knife or a weapon in Gill's hands at any time. And the record clearly shows that a careful search was made for a weapon at the time Gill's body was viewed and after it was removed, and that neither a knife nor a weapon of any kind was found on the person of the deceased nor anywhere about the place where he was killed.

The testimony of the witnesses for the state is, substantially that Gill, the deceased,

and Stracner, the defendant, were talking to each other as they walked together from the Mexican's house to the place where Stracner's car was parked. After they got to the car, Gill continued to talk. He finally stopped talking and, after shaking his finger in Stracner's face, started to walk away. Stracner then shot Gill whose side was turned towards Stracner at the time. This shot went through Gill's left arm and body. Gill threw his right arm around and caught his left arm and started to run and Stracner shot him again. This shot was fired into Gill's back. Gill fell when struck by the second shot. Stracner then got into his car and drove away.

From the record it is clear that the testimony of the defendant and his witnesses is rebutted by the testimony of the witnesses for the state and also by the physical facts.

Defendant's testimony that Gill had him by the collar with his left hand and that his right hand was in his pocket when the shots were fired is contradicted by the physical facts. If defendant's testimony were true it would have been impossible for the bullet from the first shot to enter Gill's left arm and go through his body as shown by the testimony of the coroner. And it is clear that Gill could not have been bending over Stracner and grappling with him when the second shot was fired, because the second shot entered Gill's back. That the second shot was not fired from close quarters is further shown by the fact that Gill's shirt was not set on fire by the second shot as it was by the first shot.

The physical facts in the case clearly bear out the testimony of the witnesses for the state that Gill had turned and was leaving and had his side turned towards Stracner when the first shot was fired, and that he was some twelve to fifteen feet away from Stracner when the second shot was fired into his back.

We agree with the finding of the trial judge that an overt act or hostile demonstration was not shown and that his ruling excluding evidence of prior threats and the dangerous character of the deceased was correct.

Defendant contends that the trial judge's conception of an overt act, as shown by the statement per curiam, is entirely too broad. Defendant argues that the overt act has to be merely some unfriendly demonstration or act on the part of the deceased against the accused, which would lead a reasonable man to believe, knowing what he knew and seeing what he saw, that the deceased was about to execute his threats.

Defendant's contention is not tenable. The definition of an overt act contained in the statement per curiam is in accordance with the definition of the term as settled by the jurisprudence of this state. Thus in State v. Brown, 172 La. 121, 133 So. 383, this court said (page 386):

"An overt act is a hostile demonstration of such character as to create in the mind of a reasonable person the belief that he is in immediate danger of losing his life or of suffering great bodily harm. The term 'overt act,' as used in connection with pros-

ecutions for murder where the plea of self-defense is involved, means any act of the deceased which manifests to the mind of a reasonable person a present intention on his part to kill defendant or do him great bodi-ly harm."

A number of authorities are cited by the court in support of its statement. See, also, State v. Jones, 175 La. 1066, 145 So. 9.

■ Bills Nos. 16 and 17 were reserved to the refusal of the trial judge to give certain requested special charges relative to the right of the jury to consider prior threats and the dangerous character of the deceased and a suggested definition as to what constitutes an overt act or hostile demonstration.

The brief does not contain any argument in support of the bills. We have examined the requested charges and the rulings of the trial judge thereon, and we find no merit in defendant's complaints.

■ Bill No. 19. This bill was reserved to the allowing of a special charge requested by the state over the defendant's objection. The charge covered the right of an accused to avail himself of the law of self-defense where the deceased had been the original aggressor and had abandoned the difficulty. Defendant's objection was that the charge was not a true and complete statement of the law.

There is nothing in the bill to indicate in what particular the charge is erroneous or incomplete. If objectionably incomplete or otherwise erroneous, the trial judge should have been given an opportunity by specific

objection to complete the charge or to correct the error. Omissions or errors in the charge of the trial judge, which he was not requested to supply or correct, afford no ground for complaint. Code Crim Proc. art. 391; State v. Scruggs, 165 La. 842, 116 So. 206; State v. Harris, 166 La. 759, 117 So. 820; State v. Johnson, 171 La. 95, 129 So. 684; State v. Terrell, 175 La. 758, 144 So. 488; State v. Linam, 175 La. 865, 144 So. 600.

■ Bill No. 20. In this bill the defendant complains because the trial judge allowed the jury to take with them into the jury room the written charge which he had delivered to them.

Defendant's complaint finds its answer in the ruling of this court in the case of State v. Riggio, 124 La. 614, 50 So. 600, that it was not improper for the jury to take the written charge of the court into their consultation room.

■ Bill No. 21. This bill is predicated solely upon the action of the trial judge refusing defendant a new trial. The bill presents nothing that was not passed on by the trial judge in his rulings on the bills reserved during the course of the trial and the knowledge the trial judge himself had of the facts. The refusal to grant a new trial was proper and this bill is without merit.

Assignment of Error. The assignment of error filed by the defendant after the transcript was lodged in this court sets forth defendant's complaint that the trial judge failed to instruct the jury they must find that the crime was committed in the Parish

of Beauregard before defendant could be convicted. But defendant did not request such an instruction and did not except to its omission by the trial judge.

Article 391 of the Code of Criminal Procedure provides:

"Every objection to the charge given * * * shall be by means of a bill of exceptions reserved before the jury shall have retired to deliberate upon their verdict, and shall be accompanied by such a statement of facts as shall show the error in the charge given * * *."

This rule was in effect prior to the adoption of the Code of Criminal Procedure. The reason for the rule is that it is not considered proper that the defendant should be permitted to sit idly by while the judge is making an erroneous charge to the jury, take his chances upon the verdict, and, if against him, then by assignment of error or motion in arrest take advantage of it. State v. Daleo, 179 La. 516, 154 So. 437.

As the judge's charge is not a part of the record, an assignment of error relating to the charge cannot be considered on appeal, since an assignment of error must be based on errors patent on the face of the record. Code Cr.Proc. art. 560; State v. Daleo, supra. For these reasons the court cannot consider the assignment of error.

For the reasons assigned, the conviction and sentence appealed from are affirmed.

O'NIELL, C. J., does not take part.

FOURNET, J., concurs in the decree.