178 So.2d 608 (1965)
Winifred Huey KIMMONS, Appellant,
v.
STATE of Florida, Appellee.
Nos. F-137, F-138.
District Court of Appeal of Florida. First District.
September 14, 1965.
Rehearing Denied October 13, 1965.
*609 Robert R. Hendry, of Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
CARROLL, DONALD K., Judge.
This is an appeal from two judgments entered by the Circuit Court for Escambia County, based upon a jury verdict, convicting the appellant of manslaughter in the slaying of his wife and her paramour.
The three points raised by the appellant for our determination in this appeal are whether the trial court committed reversible, prejudicial error: (a) in admitting into evidence an alleged confession taken while the appellant was under the influence of drugs; (b) in ordering the bailiff to deliver to the jury a written copy of the charges during a court recess and after the jury had retired to deliberate; or (c) in allowing the State to reopen its case after the defense had rested, and call a new witness for further affirmative testimony.
Briefly stated, the evidence at the trial established the following facts: The 28-year-old appellant and his wife, the parents of three young children, had been married ten years as of the date in question, September 10, 1963, and lived near the City of Pensacola. At about 10 o'clock in the morning of the said date he left his house and started to drive to work at a filling station which he owned and operated in Pensacola. Recalling that he needed to make a telephone call, he returned to his house, picked up an extension phone, and overheard his wife and a man discussing plans to meet around noon that day in a wooded section near Pensacola. The appellant then hung up the telephone receiver, left the house, and drove to his filling station, where he remained for most of the morning. Around noon he decided to return home and discuss the overheard telephone conversation with his wife, but, as he neared his house, he observed his wife driving off. He followed her car to the mentioned wooded section, and there saw her car, which was parked adjacent to the car of one Peters. As the appellant approached the two cars on foot, he held a loaded .38 calibre pistol in his hand and had a box of shells in his shirt pocket. From some bushes he observed his wife and Peters in a compromising position in her car, whereupon the appellant approached her car, the occupants of which got out and stood up, and he shot his wife four times and then shot Peters a total of seven times, causing the deaths of both.
After these shootings the appellant drove to his mother's house, where he was observed by his mother, his sister, and two attorneys to be in a state of shock, to be talking incoherently, and to be obviously in need of medical attention. This was around 1:30 P.M., about 30 minutes after the fatal shootings.
The appellant soon thereafter was taken to a hospital, where he received two shots of tranquilizers during the hour from 2 to 3 P.M. He was then taken to the county sheriff's office, where, at approximately 4:30 P.M., in the presence of officers and his attorney, he made a confession into a recording machine.
*610 Two weeks later the appellant was charged by separate indictments with the crime of murder in the first degree for the deaths of his wife and Peters. At his arraignment the appellant pleaded to each indictment not guilty and not guilty by reason of insanity. The two cases were consolidated for trial, which was held on January 6 to 10, 1964. The jury found the appellant guilty of manslaughter under each indictment, and the court sentenced him to confinement at hard labor for 12 years under each conviction, the said terms to run consecutively. Later the court denied the appellant's motion for a new trial, and this appeal followed.
With regard to the appellant's first point in this appeal  concerning the trial court's admission of the said confession into evidence  the appellee contends that there was no evidence at the trial that the appellant was under the influence of the tranquilizers or other drugs at the time he made his confession. Besides, the appellee points out, the confession amounts to nothing more than the appellant's acknowledgement that he shot his wife and her lover at a particular place and in particular circumstances, and he said all of this and more at the trial when he testified in his own behalf upon the advice of his counsel. Our examination of the record of the trial proceedings convinces us that the appellee's position is sound as to this point and that the appellant has failed to demonstrate prejudice resulting to him in the court's admission into evidence of the said confession.
The second point raised by the appellant in this appeal  concerning the delivery of the written charge to the jury after the jurors had retired  is more troublesome to resolve.
At the trial, after both sides had presented their evidence and argued to the jury, the trial court orally gave its charge to the jury, after which the jury retired to consider its verdicts. Later the jury returned to the courtroom and requested the trial judge to give them a written copy of the charges which he had orally given them. The judge ordered the bailiff to give them such a written copy, which the latter did. All this took place while the court was in recess and while neither the appellant nor his counsel was present in the courtroom.
In support of its contention concerning this second point, the appellant relies chiefly upon the decision of the Supreme Court of Florida in the early case of Holton v. State, 2 Fla. 476 (1849). In that case the Supreme Court held that a copy of the charge to the jury, admitting it to be a full and true copy, cannot rightfully be sent to the jury in a criminal case after their retirement, for the charge of the court is part and parcel of the trial of the case, the whole of which the Constitution requires to be public. In that case the written copy was given to the jury without the consent of the defendant or his counsel. The court further declared that, if a charge in such a case and under such circumstances "may be sent by the judge to the jury, it should be the original one, and not a copy."
Another Florida case cited and relied upon by the appellant in support of his position on the second point is the more recent case of Holzapfel v. State, 120 So.2d 195 (1960), in which the District Court of Appeal, Third District of Florida, held that, if the jurors in the trial of a criminal case communicate with the officer in charge of the jury and receive from him certain instructions concerning the law of the case before them, outside of the presence of the defendant and of the presiding judge, such misconduct would constitute substantial error, and the fact that the instructions given by such officer were a correct statement of the law would not excuse it, citing as authority for this holding the provisions in Sections 918.07, 919.05, and 920.05(1) (a), Florida Statutes, F.S.A. In the Holzapfel case, in which the appellant was tried for and convicted of breaking and entering with intent to commit grand larceny, the bailiff, at the jury's request, orally explained *611 to them the difference between grand larceny and other larceny. We agree fully with this holding of our sister court, for no rule is more fundamental in the trial of cases than that the instructions to the jury on the law of the case must come exclusively from the judicial officer presiding at the trial. Any other rule would, we think, lead to endless confusion, error, and injustice. That holding, however, is not applicable to the case at bar, for in this case the presiding judge directed and approved the delivery to the jury of the written copy of the charges that he had given.
The holding of our Supreme Court in Holton v. State, supra, cannot, however, be so readily distinguished, for the language used in expressing its above holding appears to outlaw the giving of a written copy of the charges to a jury after their retirement, at least in the absence of the defendant and his attorney.
When confronted with an apparently-applicable rule laid down more than a century ago by the highest court of the state, an appellate court, we think, has the right and duty, in fulfilling its judicial function, to examine closely that rule in an effort to determine whether the reason for the rule still exists today, and also to study the subsequent decisions of the appellate courts of the state to see whether that rule has been recognized and applied in appropriate cases.
The reason stated by the Supreme Court in the Holton case, supra, for the rule in question is that the court's charges are part and parcel of the trial of the case, the whole of which the Constitution requires to be public. Such a reason, if carried further, would logically prohibit a jury's taking into the jury room exhibits and documentary evidence  a practice universally upheld  and would even require that jurors conduct their deliberations in public.
We are inclined to surmise that an unspoken reason for the rule laid down in the Holton case, supra, is the fact that in 1849, when that decision was rendered, a written copy of instructions usually meant a copy written by pen or pencil in the sometimes illegible or confusing handwriting of the presiding judge or of a court attache. We judicially know that the typewriter was not invented until many years after the said decision was rendered, which machine, now so universally used in court proceedings, has contributed greatly to the accuracy and readability of reports of proceedings, together with vast improvements in shorthand reporting.
Another unexpressed reason for the holding in the Holton case may have been the illiteracy of many persons called to jury duty at the time (1849) when that decision was rendered. This reason was given for such a holding in some of the early decisions from other states. For instance, the Supreme Court of Indiana in 1862 said in the case of Smith v. McMillen, 19 Ind. 391, that, if the court sends written instructions to the jury, "inasmuch as the jurors are not upon equality in their ability to read and interpret writing, it puts it in the power of sharp ones on the jury to read, and become the interpreters for the Court; and mislead their less skillful fellow-jurors." This reason, we must admit, has some logical force in times and places where illiteracy is widespread, except for the fact that even then the power of the "sharp ones" to mislead their "less skillful fellow-jurors" is much greater when the memories of the jurors vary as to exactly what the trial judge said in his oral instructions. In addition, everyone knows, and so we judicially know, that the rate of illiteracy in this country and state is much lower today than more than a century ago, when the decisions in the Holton and McMillen cases, supra, were rendered, and hence the reason for the rule, as stated in the McMillen case, has lost most of whatever force it may have ever had.
The sole purpose of a trial court's instructions to the jury is to advise them of the law applicable to the case being tried before them in order that the verdict which *612 they reach shall be in conformity with the law. Without such instructions the most precious and fundamental concept in our civilization today  the rule of law  would be impossible of attainment in jury trials.
Dedicated jurists and students in the field of the administration of justice have long been concerned with the fact that an almost impossible burden is placed upon these untrained laymen on the jury to remember and correctly apply all of the often-complex law which is rattled off by the presiding judge in his jury instructions. Everyone knows, and so we know, of the unreliability of the human memory especially as to matters in an unfamiliar area. When the jurors in a case recognize the frailty of their memories and the vital importance of faithfully following the law as given them by the court, and they request the court to let them have a written copy of the charges, we think that, in the interest of the administration of justice, the trial court may, in its discretion, give them a written copy of its instructions, assuming, of course, that such copy reflects with substantial accuracy the instructions actually given orally. We agree with the Holton decision, however, that it would be error for the court to give the jury such a written copy other than in open court and in the presence of the defendant and his counsel, so that objection can be made by the counsel if he finds any material and prejudicial discrepancies between the oral instructions and the written copy, or if he finds any markings, notations, or anything else on the written copy that might prejudice his client's cause. The said error may become a reversible error if the said objections of the accused's counsel are held to be meritorious on appeal.
Before thus departing from the strict holding in the Holton case, supra, on the ground that the apparent reasons for such holding no longer exists today, and on the ground discussed below that such holding is contrary to the trend of modern authority and to what we conceive to be the better view, we have "Shepardized" the Holton case and found that, since 1849, the date of that case, in no decision has a Florida appellate court cited and relied upon that holding that a written copy of the trial court's instructions cannot lawfully be given to the jury after their retirement. In several decisions, however, those courts have cited and relied upon that case for the general proposition that in the trial of a capital case the defendnat must be present during the whole trial. See, for instance, Irvin v. State, 19 Fla. 872 (1883), and Morey v. State, 72 Fla. 45, 72 So. 490 (1916).
A reading of the general textbooks and encyclopedias on the subject of the legality of giving to the jury a written copy of the instructions they have orally received, discloses that there are respectable authorities on both sides of this proposition. One of the most accurate statements of this split of authorities is found in 53 Am.Jur., Trial, Sec. 935, as follows:
"It is clearly error for a court to permit the jury to take with them to the jury room instructions refused. According to some authorities, instructions given on the trial should not be sent to the jury room without consent of the parties, but according to others, the matter, in the absence of statute, rests in the discretion of the trial judge. Some statutes specifically authorize the jury to take with them written instructions given."
The general rule is thus stated in 23A C.J.S. Criminal Law § 1369, pages 986 and 987:
"As a general rule, it is proper for the court, within its discretion, to permit the written instructions to be taken to the jury room for the consideration of the jury while deliberating on their verdict, at least if the parties do not object; but in the absence of any request for the instruction, or of a special necessity therefor, the failure to send *613 the instructions to the jury room is not error, except where it is required by statute that the jury must be permitted to take the written instructions with them to the jury room."
One of the cases cited in American Jurisprudence in support of the modern view, and apparently a leading case on the subject, is State v. Peters, 44 Haw. 1, 352 P.2d 329, 81 A.L.R.2d 1137 (1959), in which the Supreme Court of the State of Hawaii said:
"Defendant's last specification of error is that the trial court erred in permitting the jury to take a copy of the instructions to the jury room. Although in the absence of statute there is no uniform practice, the authorities hold that the trial court may, in its discretion, permit the jury to take instructions to their deliberation. One court has held the practice to be not only permissible but commendable. Valley National Bank v. Witter, 58 Ariz. 491, 121 P.2d 414.
"It is the view of this court that as long as there is no abuse of discretion and the manner in which it is done is not prejudicial, the trial court may permit instructions to be taken by the jury. In the case at bar, the jury was permitted to take a copy of the given instructions holus bolus without separation or markings to indicate who requested them. The copy had been previously examined by counsel on both sides, who expressly admitted having no objections as to the accuracy of the same. The position which this court takes on the subject is fully supported by Copeland v. United States, 80 U.S.App.D.C. 308, 152 F.2d 769; Carrado v. United States, 93 U.S.App. D.C. 183, 210 F.2d 712; State v. Stracner, 190 La. 457, 182 So. 571; Lindsey v. State, [229] Ark. [450], 316 S.W.2d 349. The cases cited by defendant have been carefully examined and found to be here inapplicable or distinguishable, in that they involved facts showing that the trial court had either given supplemental instructions or entered the jury room with no notice to and in the absence of counsel."
Some authorities treat the subject of written instructions by considering them to be in the category of other documents forming a part of the record of the trial. For instance, Anderson in his "Wharton's Criminal Law and Procedure," vol. V, page 294, states the rule as follows:
"The judge may allow documents forming part of the record of the trial, or properly used before the jury on the trial, such as the indictment, and the plea, and bills of particulars, and the judge's written instructions, to be taken out, provided the jury understand that they are not evidence. Whether other papers may be taken out depends on the particular use made of them in the trial."
Cases from Arkansas, Illinois, and Missouri are cited in support of the above statement concerning written instructions.
A most persuasive factor in this consideration in Florida is the fact that, ninety years after the Holton decision was rendered, the Florida Legislature enacted a law that expressly authorizes the sending of written instructions to juries in trials of criminal cases. Section 219 of Chapter 19554, Laws of Florida, Acts of 1939 (now reported as Section 919.04, Florida Statutes, F.S.A.), provides as follows:
"What jurors may have with them. Upon retiring for deliberation the jurors may, if the court permits, take or later have sent to them:
"(1) Forms of verdict approved by the court, after being first submitted to counsel.
"(2) Any written instructions given; but if any such instruction is taken or sent all the instructions shall be taken or sent.

*614 "(3) All things received in evidence, other than depositions. If the thing received in evidence is a public record or a private document which in the opinion of the court, ought not to be taken from the person having it in custody, a copy shall be taken or sent instead of the original."
In Brown v. State, 152 Fla. 508, 12 So.2d 292 (1943), the Supreme Court of Florida said that it was within the trial court's discretion to grant the motion of the defendant's counsel to permit the jury to take to the jury room all charges that had been given by the court, but that the denial of such motion was not an abuse of discretion. The Supreme Court said with reference to the above-quoted statute (Section 919.04, Florida Statutes, F.S.A.):
"This is ample authority for delivering to the jury the charges of the court, however, it was within the court's discretion to grant the motion of counsel and we cannot decide from the record in this case that any abuse was committed by his denial."
The split of authority on the question of sending written charges to the jury during their deliberations is delineated in 89 C.J.S. Trial § 468, where also is described a third view, which we share, that the sending of the written instructions to the jury in the absence of the defendant and his attorney is at most an irregularity which does not require a reversal if no prejudice is shown to have resulted.
In the appeal before us the appellant has failed to demonstrate that he was prejudiced in any way by the court's sending to the jury the written copy of the instructions. Seemingly the most serious deviation of the written copy from the oral instructions is the failure to include in such copy the following sentence in the oral instructions: "Finally the Indictment includes the still lesser degree of unlawful homicide known as manslaughter." Obviously the omission of that sentence could not conceivably have prejudiced the appellant, for the jury actually brought in a verdict of guilty of the said lesser offense of manslaughter.
In addition to the above considerations, we think that the appellant here waived his objection to the delivery of the written charges to the jury by failing to make timely and prompt objection to that procedure. While the transcript of the trial proceedings does not cover the events involved in the delivery of the written charges to the jury, the trial court recites in its order denying the appellant's motion for a new trial the following facts, which are not controverted elsewhere in the record: "* * * and the Court further taking judicial knowledge of the fact that said written charge handed to the jury was the same written charge delivered to the jury by the Court at the conclusion of the case, and to which the defendant had taken no exception, and before the jury retired to deliberate its verdict, and upon inquiry by" the defendant's counsel "as to what had been given the jury, the Court advised him that the jury had requested and had been handed the Court's written charge; that thereupon said counsel voiced no objection thereto * * *." If such delivery had been in any way prejudicial to the defendant, the latter's counsel should have promptly interposed an objective so that the court might, if error or prejudice was demonstrated, take timely steps to eliminate any prejudicial effect.
Our conclusion as to this second point on appeal is that the trial court's sending of the written copy of the charges to the jury at their request constituted at most an irregularity and was in keeping with modern concepts in the administration of justice, and did not constitute reversible error in the absence of a showing that the defendant was prejudiced by the said act, such as a showing of substantial and prejudicial deviations between the oral and the written charges or a showing of prejudicial markings or notations on the written charges. *615 In the case at bar we hold that the required showing of prejudice has not been made and that, in any event, the defendant's right to object was waived by his counsel's failure to make timely objection to the said procedure.
In his third point on appeal the appellant claims that the trial court committed reversible error in allowing the State to reopen its case and call a certain witness for further affirmative testimony after the appellant had rested his case. The State contended before the trial court that the said witness had not been located until the late afternoon or night before, a short time after the defense had opened its case, but the State admitted that it had not notified the defense of its intention to call the witness, although the defendant had requested the names of witnesses to be used at the trial.
In this appeal the appellant contends, and we agree in principle, that to be entitled to the privilege of reopening, a party must exhibit candor and fairness and not utilize such circumstances to surprise the other party. On its part the State contends that it would have been pointless for the prosecutor to have provided the defense counsel with the name of the said witness unless and until, after his examination of her, he determined that he was in fact going to be able to use her as a witness, which examination he could not undertake through the balance of the day since he was engaged in the trial; and that, when it became apparent to him that the witness' testimony was necessary or proper, her identity was made known to the court and to the defense counsel, and the court, out of an abundance of caution and consideration, made her available to the defense counsel for examination prior to the time she was permitted to take the stand and testify.
The question of permitting a party to reopen its case is one of the questions arising during trials that rest primarily within the sound judicial discretion of the trial judge in carrying out his sacred duty to assure that the trials over which he presides are conducted in accordance with the precepts of justice and fairness to all parties concerned, in order that truth and justice  the objects of our court system  may be attained. Because of this sacred duty, which we think the trial judges of this State unremittingly endeavor to carry out with devotion and ability, and because the judge presiding at a trial is in a much better position than the members of an appellate court, who are confined in their consideration to the "cold record," the appellate court should not ordinarily substitute its judgment for that of the trial judge in matters that might be categorized as the "incidents" of a trial, such as the reopening of the case by one of the parties.
In the case at bar we find that there is no showing that the trial judge clearly abused his discretion in allowing the State to reopen its case. We further think that whatever surprise the new testimony might have been to the defense counsel was to some extent lessened by the wise decision of the judge to grant that counsel an opportunity to examine the witness before she took the stand.
Since the appellant has failed to establish the commission of any reversible error in entering the final judgments appealed from herein, those judgments must be and they are
Affirmed.
RAWLS, C.J., and WIGGINTON, J., concur.