875 So.2d 1011 (2004)
STATE of Louisiana
v.
Alton JOSEPH.
No. 03-KA-1445.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
Harry J. Morel, Jr., District Attorney, Juan A. Byrd, Assistant District Attorney, Hahnville, LA, for Plaintiff/Appellee.
*1012 Prentice L. White, Louisiana Appellate Project, Baton Rouge, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Defendant, Alton Joseph appeals his conviction and sentence for armed robbery. For the following reasons, the defendant's conviction and sentence are affirmed, and we remand in order to correct an error patent on the face of the record.
Defendant, Alton Joseph, was charged in a bill of information on May 29, 2002 with armed robbery in violation of LSA-R.S. 14:64. Joseph pled not guilty, proceeded to trial on September 10, 2002, and was found guilty as charged by a twelve-person jury. On November 7, 2002, Joseph was sentenced to fifteen years without benefit of parole, probation, or suspension of sentence.
Joseph sought and was granted an out-of-time appeal on September 19, 2003 and presently seeks review of his conviction and sentence.
On May 7, 2002, Detectives Michael Burk and Brandon Mouriz, both with the Plaquemines Parish Sheriff's Office, were working as undercover agents for the St. Charles Parish Sheriff's Office. They were equipped with an undercover vehicle that had audio and video devices and were sent into an area in Norco to purchase illegal narcotics. At approximately 5:12 p.m., Detectives Burk and Mouriz came in contact with two black males in a blue Honda Civic on Bethune Street. Detective Burk, who was sitting in the passenger seat, asked the men for a "20," which is street slang for crack cocaine. The men stated they only sold in large amounts, so Detective Burk asked what he could get for $100. One of the men asked if he wanted marijuana, to which Detective Burk replied that he did. The driver of the blue Honda then asked Detective Burk to get into his car, but Burk declined. The driver told the detectives to wait, and stated he would make the block and be right back.
Approximately two to three minutes later, the two men approached the detectives' car on foot, and the man who had been the driver brandished a gun and demanded all of their money. The second man, later identified as defendant, stood behind the driver during the robbery. The perpetrators robbed the detectives of $160. The entire incident was recorded on the detectives' video equipment.
The detectives notified their cover team that they had been robbed. Thereafter, Detective Wayne Joseph, with the St. Charles Parish Sheriff's Office, secured the video tape of the incident. Deputy Clyde Taylor, also with the St. Charles Parish Sheriff's Office, reviewed the tape and identified defendant as one of the perpetrators in the video. A photographic lineup was prepared and shown to Detectives Burk and Mouriz. While Detective Burk was unable to identify defendant as one of the assailants, Detective Mouriz identified Joseph as one of the perpetrators both in the photo lineup and in court during trial. Additionally, the blue Honda Civic was recovered and Joseph's fingerprint was found on the car.
Joseph testified that he was with the co-perpetrator, Alex Johnson, on the morning of the robbery but was not present when Detectives Burk and Mouriz were robbed. Joseph further denied he was the person captured on the videotape during the robbery.
In his first assignment of error, Joseph argues there was insufficient evidence *1013 to convict him of armed robbery because the State failed to prove his identification as the perpetrator beyond a reasonable doubt. Joseph challenges Detective Mouriz's identification of him as the perpetrator as unreliable because it was made only after Deputy Clyde Taylor, who was not involved in the undercover operation, reviewed the videotape and identified defendant as one of the two persons on the video. Joseph also asserts Deputy Taylor's identification of him from the video is flawed because it was only based on Joseph's alleged hairstyle, as opposed to any distinguishing physical characteristics.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.[1] In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the identity of the perpetrator.[2] When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof.[3] Since Joseph does not dispute a robbery occurred and has only alleged the State failed to prove he was the perpetrator of the crime, we will not address the sufficiency of the evidence with respect to the statutory elements of armed robbery.
To prove identification in this case, the State offered the testimony of Deputy Clyde Taylor and victim Detective Mouriz as well as the videotape of the robbery. Deputy Clyde Taylor, a sixteen-year employee of the St. Charles Parish Sheriff's Office, testified that he has lived in Norco for the past ten years and has lived there off and on his entire life. He stated he has known Joseph since Joseph was eight or nine years old and can easily recognize Joseph.
On the same day as the robbery, Deputy Taylor was asked to review the videotape of the robbery. After reviewing the videotape, Deputy Taylor identified Joseph as one of the two people in the video. Deputy Taylor stated that, despite Joseph partially covering his face with a rag in the video, he still recognized Joseph because he has known him so long. He explained that Joseph usually wore his hear in braids and the curls in his hair on the video showed the braids were taken out. He further stated that Joseph looked different in court because he was wearing his hair short, in a low afro cut. Deputy Taylor testified that he had no doubt that Joseph was the person in the video.
Victim Detective Mouriz testified that he got a good look at the perpetrators who robbed him and Detective Burk. He explained that the gun was pointed at Detective Burk and that he looked at the second subject to see what he was doing and to make sure he did not have a weapon. Detective Mouriz stated he identified defendant in a photographic lineup approximately six hours after the robbery as the person standing next to the perpetrator with the gun during the robbery. He further identified Joseph in court as one of the perpetrators who robbed him and again explained that Joseph was not the one with the gun. He also noted Joseph *1014 looked different in court because he had shaved his hair. Nonetheless, Detective Mouriz testified he had no doubt Joseph was one of the two people who robbed him.
On cross-examination, Detective Mouriz was asked about Deputy Taylor's prior identification of defendant and whether the two had spoken about the identity of the perpetrators. Detective Mouriz stated he and Deputy Taylor had spoken about the robbery but did not discuss the identity of the perpetrators. In fact, Detective Mouriz testified he was unaware Deputy Taylor had identified either of the perpetrators.
Additionally, the State presented evidence that a fingerprint had been lifted from the passenger side window and door of the same blue Honda civic in which the two perpetrators had initially been riding. Fingerprint expert Sergeant Billy LeBlanc testified that the lifted fingerprint matched Joseph.
Joseph contends this evidence was insufficient to prove he was the perpetrator of the robbery. He maintains that Deputy Taylor's identification of him from the videotape was weak because it was based on Joseph's hairstyle. However, on cross-examination, Deputy Taylor denied recognizing Joseph from the hairstyle more than defendant's features.
Joseph also asserts Detective Mouriz was unable to identify him until after Deputy Taylor first made the identification after viewing the videotape. Joseph seems to suggest Deputy Taylor gave Detective Mouriz defendant's name prior to Detective Mouriz making the identification. We find that the record does not support this position. It was Deputy Taylor's initial identification that led to the preparation of the photographic lineups. Detective Mouriz testified he was unaware Deputy Taylor had made an identification of either perpetrator. He further denied discussing the identity of either suspect with Deputy Taylor. Nothing in the record shows Detective Mouriz was given the name of one of the perpetrators prior to identifying defendant in the photo lineup.
It is the fact finder's function to determine the weight of the evidence bearing on the defendant's identification. It is not the appellate court's function to reevaluate the credibility choices made by the fact finder.[4]
The jury heard all the above evidence. They were aware Detective Burk was unable to identify defendant as one of the perpetrators. They heard Detective Mouriz testify that he had no doubt Joseph was one of the two people who robbed him on May 7, 2002. The jury also heard Deputy Taylor testify he had no doubt Joseph was one of the two perpetrators in the videotape of the robbery. The jury further heard the fingerprint evidence that linked Joseph to the car involved in the incident. Additionally, the videotape of the robbery was played for the jury three times, and the jury had the benefit of seeing Joseph while watching the videotape.
Viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could find, beyond a reasonable doubt, that Joseph was the perpetrator of the armed robbery.
In his second assignment of error, Joseph asserts that the trial court erred in giving the jury a copy of the written jury instructions to take into the jury deliberation room. Joseph contends LSA-C.Cr.P. art. 808 allows the jury to be given a copy *1015 of the jury instructions only when both parties consent, and maintains that the trial court in this case gave the jury the written jury instructions over his objection. The State argues that a defendant's consent is only required when the jury requests further charges that are not contained in the original jury instructions.
The record in this case shows that after the jury retired to deliberate, they sent two questions to the trial court. The first question was sent to the trial court approximately thirty minutes after the jury entered into deliberations and requested the written definition of armed robbery, first degree robbery and simple robbery. After some discussion with the parties, the trial court brought the jury back into the courtroom and reread the requested definitions. The jury again retired to deliberate.
Approximately fifty minutes later, the jury sent a second question to the trial court which stated, "[c]an you read us a legal definition of `possession'?". Out of the presence of the jury, the trial court noted the jurors were obviously having problems. The prosecutor suggested the jury be given the entire jury instruction to which defense counsel objected. The jury was then brought back into the courtroom and the trial court told the jurors he could not give them a definition of possession. However, over the objection of defense counsel, the trial court then gave the jury a copy of the previously read jury instructions to take with them into the jury room.
In 2001, LSA-C.Cr.P. arts. 801 and 808, relating to charging the jury, were amended to allow written jury instructions to be taken into the jury room under certain circumstances.[5] As amended, LSA-C.Cr.P. art. 801 provides in pertinent part:
Art. 801. Time for charge; when written charge required
A. The court shall charge the jury after the presentation of all evidence and arguments. The court shall reduce its charge to writing if it is requested to do so by either a defendant or the state prior to the swearing of the first witness at the trial on the merits. The court's written charge shall be read to the jury. The court shall deliver a copy thereof to the defendant and to the state prior to reading it to the jury.
B. (1) After such written charge is read to the jury, a copy of the written charge shall be delivered to the jury if such delivery is consented to by both the defendant and the state in open court but not in the presence of the jury.[6]
LSA-C.Cr.P. art. 808 provides:
Art. 808. Manner of giving further charges after jury retires
If the jury or any member thereof, after having retired to deliberate upon the verdict, desires further charges, the officer in charge shall bring the jury into the courtroom, and the court shall in the presence of the defendant, his counsel, and the district attorney, further charge the jury. The further charge may be verbal, but shall be in writing if requested by any juror. No charge shall be reduced to writing at the request of a juror pursuant to this Article unless consent is obtained from both the defendant and the state in open court but not within the presence of the jury. The lack of consent by either the defendant or the state shall not be communicated to the jury. A copy of the court's written charge shall be delivered to the defendant, the state, and the jury. *1016 [Emphasis added to reflect that portion of the article added by the 2001 amendment.]
As pointed out by the trial court, there are some internal conflicts within Article 808. On one hand, the article mandates the further charge be in writing if requested by any juror. On the other hand, the very next sentence states "no charge shall be reduced to writing at the request of a juror" unless both parties consent.
The apparent intent of the legislature in amending Articles 801 and 808 was to overrule longstanding jurisprudence that prohibited jurors from being given a copy of the written jury instructions. Prior to the 2001 amendments, recent jurisprudence held that the trial court was prohibited from giving written jury charges to the jury for their use during deliberations. In State v. Yoxtheimer,[7] the defendant argued the jury should have had a copy of the charges in the jury room but the Louisiana Supreme Court disagreed and found "[t]he trial court correctly refused the request that the written charge be given to the jury upon its retiring to the jury room for deliberations." In State v. Simms,[8] this Court cited Yoxtheimer and stated, "[t]he current State of Louisiana law continues to prohibit the court's written charge from being considered by the jury during deliberations." Additionally, as of 1998, Official Revision Comment (d) to LSA-C.Cr.P. art. 801 explained "[t]his article does not authorize the jury to take with them a copy of the judge's written charges when they retire to deliberate."
To the contrary, earlier jurisprudence found no prohibition in allowing a jury to view written jury instructions during deliberations. In State v. Riggio,[9] the defendant complained when the jury was allowed to take written charges into their deliberation room. The Louisiana Supreme Court stated, "[w]e can see no good reason why this should not be done. It has often been held to be proper."[10] Later, in State v. Campbell,[11] the supreme court relied on Riggio and stated "the law is that it is not improper for the jury to take with them into the jury room the written charge of the trial judge." Also, in State v. Stracner,[12] the supreme court again found "it was not improper for the jury to take the written charge of the court into their consultation room."
In State v. Strickland,[13] the Louisiana Supreme Court noted the apparent conflicting holdings of Riggio, Campbell, and Stracner, but again found that the trial court correctly refused to give the jurors a copy of the written jury instructions by relying on Yoxtheimer and comment (d) of LSA-C.Cr.P. art. 801. The supreme court did not discuss or resolve the conflict. However, the supreme court went on to say that even had the trial court erred in refusing to give the jury a copy of the written charges, the jury foreman told the trial court that the jury did not really need the instructions.
With the 2001 amendments to LSA-C.Cr.P. arts. 801 and 808, it is now statutorily permissible for the jury to receive a copy of the written jury instructions to use during deliberations. However, the use is *1017 clearly conditioned upon the consent of the parties.
In this case, after the first jury question, defense counsel appeared to consent to giving the jury a copy of the written instructions but the prosecutor did not. After the second jury question, the prosecutor seemed amenable to giving the jury a copy of the written instructions but defense counsel objected. Since there was no consensus between the parties, it appears the trial court erred in giving the jury a copy of the written instructions to take back with them into their deliberations.
The State suggests that dual consent is only required when an additional charge is given to the jury that is outside the original jury charges. This argument is flawed. Under LSA-C.Cr.P. art. 801, the consent of both the state and defendant is required before written charges may be given to the jury. Under LSA-C.Cr.P. art. 808, both parties must consent before a further charge can be reduced to writing in response to a juror's request. Despite the conflict within Article 808 relating to the mandate that a further charge must be reduced to writing at the request of a juror as previously discussed, it appears the legislature intended the consent of the parties to be of paramount importance.
Despite the trial court's error in giving the jury a copy of the written jury instructions over the objection of defendant, after reviewing the record, we find that such error does not appear to warrant reversal. LSA-C.Cr.P. art. 921 provides that a ruling shall not be reversed because of any error which does not affect the defendant's substantial rights. As discussed above, the earlier jurisprudence found no problems with the jury being given a copy of the written charges. The jurisprudence then shifted into a prohibition against such action. Joseph does not argue he was prejudiced by the jury's possession of written charges and the record further does not reveal any prejudice. The jury instructions were read in their entirety in open court in the presence of defendant and his counsel prior to the jury retiring to deliberate. Thereafter, a portion of the same jury instructions were reread to the jury in open court again in the presence of defendant and his counsel. We therefore find that the trial court's error in allowing the jury to take instructions into the jury deliberation room was harmless.[14]
We further reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[15] and State v. Weiland.[16] The following error is noted.
The transcript does not show that Joseph was advised of the two-year prescriptive period for filing post-conviction relief as required by LSA-C.Cr.P. art. 930.8. We therefore remand, for the specific purpose of ordering the trial court to inform defendant of the two-year prescriptive period *1018 by sending written notice to defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received such notice.[17]
For the foregoing reasons the defendant's conviction and sentence are affirmed, and we remand in order to correct the error patent on the face of the record noted above.
AFFIRMED, REMANDED WITH ORDER.
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
[2] State v. Taylor, 99-296 (La.App. 5 Cir. 7/27/99), 740 So.2d 216, 222, writ denied, 99-2609 (La.3/17/00), 756 So.2d 322.
[3] Id.
[4] State v. Page, 02-689 (La.App. 5 Cir. 1/28/03), 837 So.2d 165, 175, writ denied, 03-0951 (La.11/7/03), 857 So.2d 517.
[5] Acts 2001, No. 310 § 1.
[6] Under the 2001 amendments, LSA-C.Cr.P. art. 801(B) was added in its entirety.
[7] 301 So.2d 318, 320 (La.1974).
[8] 465 So.2d 769, 779 (La.App. 5 Cir.1985).
[9] 124 La. 614, 50 So. 600 (1909).
[10] Id., 124 La. at 619, 50 So. at 601.
[11] 173 La. 831, 138 So. 853, 857 (1931).
[12] 190 La. 457, 182 So. 571, 575 (1938).
[13] 94-0025 (La.11/1/96), 683 So.2d 218, 226-227.
[14] In Sanders v. State, 264 Ind. 688, 348 N.E.2d 642 (1976), the Indiana Supreme Court found no reversible error when the trial court permitted the jury to take the final jury instructions into the jury room in contravention of prevailing practices. The court found the error was not of a "sufficient magnitude to warrant reversal in this otherwise properly tried case." Id., at 644. See also, Coleman v. State, 465 N.Ed.2d 1130, 1134 (Ind.1984), where the Indiana Supreme Court found harmless error when the trial court sent written instructions with the jury for their use during deliberations despite the accepted practice of not allowing jurors to take written instructions with them into the jury room. The Indiana Supreme Court noted the instructions were first read in open court in the presence of defendant and his attorney.
[15] 312 So.2d 337 (La.1975).
[16] 556 So.2d 175 (La.App. 5 Cir.1990).
[17] State v. Miller, 02-729 (La.App. 5 Cir. 12/30/02), 836 So.2d 614, 618, writs denied, 03-0200 (La.10/10/03), 855 So.2d 326, and 03-0503 (La.10/10/03), 855 So.2d 329.